**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IRMA ALLEN and BARTLEY MICHAEL MULLEN, JR., individually and on behalf of all others similarly situated, | | Case No. |
| Plaintiffs, | | |
| v. | | |
| OLLIE'S BARGAIN OUTLET, INC. | | |
| Defendant. | | |

## NATIONAL CLASS ACTION COMPLAINT

Plaintiffs, Irma Allen and Bartley Michal Mullen, Jr. ("Plaintiffs"), individually and on behalf of all others similarly situated, brings this class action against Ollie's Bargain Outlet, Inc. ("Defendant"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (the "ADA") and its implementing regulations, for declaratory and injunctive relief, attorneys' fees, expenses and costs pursuant to 42 U.S.C. § 12181 *et seq.* (the "ADA") and its implementing regulations.

## INTRODUCTION

1.      This is a case about putting profit ahead of the rights of people with disabilities.

2.      Defendant positions a host of obstructions, including merchandise displays, stocking carts, bins, dollies, and ladders so that they block or narrow the aisle pathways of its stores.

3.     Upon information and belief, this practice is intentional, and driven by a calculated judgment that impeding interior paths of travel increases sales revenue and profits. *Stuff Piled in the Aisle? It's There to Get You to Spend More*, The New York Times, (April 7, 2011).[1] See also e.g., *Why a Messy, Cluttered Store is Good for Business*, Time Magazine, (April 8, 2011).[2]

4.     Although this practice may indeed increase profits for Defendant, it does so at the expense of basic civil rights guaranteed to people with disabilities by the ADA because it results in unlawful access barriers.

5.      Plaintiff Allen endured a stroke approximately three years ago, losing use of the majority of the left side of her body, and as a result, uses a wheelchair or motor scooter for mobility and, at all times relevant hereto, has suffered from a legal disability as defined by the ADA, 42 U.S.C. § 12102(2).

6.     Plaintiff Mullen is a double amputee and as a result, uses a wheelchair or motor scooter for mobility and, at all times relevant hereto, has suffered from a legal disability as defined by the ADA, 42 U.S.C. § 12102(2).

7.     Plaintiffs are therefore a member of the protected class under the ADA and the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et. seq*.

8.     Plaintiffs have visited Defendant's stores and have repeatedly been denied full and equal access to the stores as a result of accessibility barriers existing in interior

---

[1] Available at https://www.nytimes.com/2011/04/08/business/08clutter.html as of March 7, 2019.

[2] Available at http://business.time.com/2011/04/08/why-a-messy-cluttered-store-is-good-for-business/ as of March 7, 2019.

paths of travel. These access barriers include but are not limited to: merchandise displays, bins, dollies, and ladders, positioned so that they impermissibly block or narrow the aisle pathways. These conditions violate the ADA and severely impede Plaintiffs' ability to access the goods and services offered at Defendant's stores.

9.      The access barriers described herein are not temporary and isolated. They are systemic, recurring, and reflective of Defendant's marketing and store policies and practices.  Plaintiffs have encountered the same barriers on multiple occasions and have been repeatedly deterred from accessing Defendants' goods and services as a result.

10.      Counsel for Plaintiffs have overseen an investigation into Defendant's stores which has confirmed the widespread existence of interior access barriers that are the same as, or similar to, the barriers directly experienced by Plaintiffs.

11.      Unless Defendant is required to remove the access barriers described herein, and required to change its policies and practices so that these access barriers do not reoccur at Defendant's stores, Plaintiffs and the proposed Class will continue to be denied full and equal access to the stores and will be deterred from fully using Defendant's stores.

12.      In accordance with 42 U.S.C. § 12188(a)(2), Plaintiffs seek a permanent injunction requiring that:

a) Defendant remediate all interior path of travel access barriers at Defendant's stores, consistent with the ADA;

b) Defendant changes its policies and practices so that the interior path of travel access barriers at Defendant's stores do not reoccur; and

c) Plaintiffs' representatives shall monitor Defendant's stores to ensure that the injunctive relief ordered pursuant to this Complaint has been implemented and will remain in place.

3

13.     Plaintiffs' claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

> Subdivision (b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate…. Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## THE ADA'S CLEAR AND COMPREHENSIVE MANDATE

14.     The ADA was enacted over a quarter century ago and was intended to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

15.     The ADA is the central civil rights law protecting people with disabilities, a group of Americans who are too often overlooked and undervalued. Like other civil rights laws, the purpose of the ADA is clear: the eradication of discrimination. As one legal scholar explained: "A single step in front of a store may not immediately call to mind images of Lester Maddox standing in the door of his restaurant to keep blacks out. But in a crucial respect they are the same, for a step can exclude a person who uses a wheelchair just as surely as a no-blacks-allowed rule can exclude a class of people." Samuel Bagenstos, *The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA*

*Litigation*, 54 UCLA L. Rev. 1, 23 (2006).

16.    The Supplementary Information to 28 C.F.R. § 36 explains, among other things: "Some of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities."

17.    Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). It prohibits places of public accommodation, either directly or through contractual, licensing, or other arrangements, from outright denying individuals with disabilities the opportunity to participate in the goods or services offered by a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(i), or denying individuals with disabilities the opportunity to fully and equally participate in a place of public accommodation, 42 U.S.C. § 12182(b)(1)(A)(ii).

18.    Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, or

accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); or from affording goods, services, facilities, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); or from providing goods, services, facilities, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)).

## THE ADA AND THE RIGHT OF NON-DISCRIMINATORY ACCESS TO GOODS

19.     The ADA specifically prioritizes "measures to provide access to those areas where goods and services are made available to the public. These measures include, for example, adjusting the layout of display racks, rearranging tables …" 28 C.F.R. § 36.304

20.     The ADA and its implementing regulations define prohibited discrimination to include the following: A)  the failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992, 28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv); B) the failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1); c) for alterations to public accommodations made after January 26, 1992, the failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities, 28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2); and D) the failure to maintain those features of public accommodations that are required to be readily accessible to and usable by persons with disabilities, 28 C.F.R. § 36.211.

21.     To be "readily accessible" under Title III of the ADA, merchandise on fixed aisle shelving in a retail store such as Ollie's Bargain Outlet must be located on an accessible route. The Department of Justice, pursuant to 42 U.S.C. § 12186(b), has promulgated the ADA Accessibility Guidelines ("ADAAG") in implementing Title III of the ADA. There are two active ADAAGs that set forth the technical structural requirements that a public accommodation must meet in order to be "readily accessible": the 1991 ADAAG Standards, 28 C.F.R. § pt. 36, App. D ("1991 Standards"), and the 2010 ADAAG Standards, 36 C.F.R. § pt. 1191, App. D ("2010 Standards").  The applicable "accessible route" standards are set forth in the 2010 Standards at Section 403.5.1.  See also, ADA Guide for Small Businesses, June 1999, available at https://www.ada.gov/smbustxt.htm (noting that "when sales items are displayed or stored on shelves for selection by customers, the store must provide an accessible route to fixed shelves and displays, if doing so is readily achievable.") ADA Figure 403.5.1 explains that an accessible route must be a minimum of 36 inches, but can be reduced to 32 inches for a length of no more than 24 inches, such as at doors, so long as the 32 inch segments are at least 48 inches apart. See ADA Figure 403.5.1 available at https://www.access-board.gov/guidelines-and-standards/buildings-andsites/about-the-ada-standards/ada-standards/chapter-4-accessible-routes (last accessed on October 9, 2018).

22.     The ADA further requires places of public accommodations to design and construct facilities to be independently usable by individuals with disabilities. 42 U.S.C. § 12183(a)(1).

23.     The ADA further prohibits places of public accommodation from utilizing methods of administration that have the effect of discriminating on the basis of a disability. 42 U.S.C. § 12182(b)(1)(D).

24.     The ADA further requires Defendants to provide individuals who use wheelchairs or scooters full and equal enjoyment of its facilities. 42 U.S.C. § 12182(a).

25.     When discriminatory architectural conditions exist within a public accommodation's facility, the ADA directs that a "public accommodation **shall** remove architectural barriers in existing facilities . . . where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(b) (emphasis added); *see also* 42 U.S.C. § 12182(b)(2)(A)(iv) (the failure to remove architectural barriers, where such removal is readily achievable, constitutes discrimination).

26.     In addition to tangible barrier removal requirements as well as physical design, construction, and alteration requirements, the ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

27.     The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

28.     The access barriers described herein demonstrate that Defendant's facilities are not altered, designed, or constructed in a manner that causes them to be readily accessible to and usable by individuals who use wheelchairs or scooters and/or that Defendant's facilities are not maintained so as to ensure that they remained accessible to and usable by individuals who use wheelchairs or scooters.

29.     Defendant's repeated and systemic practices herein described constitute unlawful discrimination on the basis of a disability in violation of Title III of the ADA.

## JURISDICTION AND VENUE

30.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

31.     Plaintiffs' claims asserted herein arose in this judicial district, and Defendant does substantial business in this judicial district.

32.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

33.     Plaintiff Allen, is, and at all times relevant hereto was, a resident of New Castle, Pennsylvania.  As described above, as a result of her disability, Plaintiff Allen uses a wheelchair for mobility. She is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*

34.     Plaintiff Mullen, is, and at all times relevant hereto was, a resident of Beaver, Pennsylvania.  As described above, as a result of his disability, Plaintiff uses a wheelchair for mobility. He is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*.

35.     Plaintiffs are both testers in this litigation and consumers who wish to access Defendants' goods and services.  *See, e.g., Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 457 (4th Cir. 2017); *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.,* 867 F.3d 1093, 1102 (9th Cir. 2017); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211-12 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-74 (1982).

36.     Defendant Ollie's Bargain Outlet, Inc. is a domestic corporation headquartered at 6295 Allentown Boulevard, Harrisburg, PA 17112.

37.     Defendant is a public accommodation pursuant to 42 U.S.C. §12181(7).

## FACTUAL ALLEGATIONS AND PLAINTIFFS' EXPERIENCE

**I.     Plaintiffs Have Been Denied Full and Equal Access to Defendant's Facilities.**

38.     Plaintiff Allen has visited Defendant's facilities located at 3306 Wilmington Road, New Castle, PA, including within the past month, and encountered unlawful and discriminatory interior access barriers including, but not necessarily limited to, merchandise displays, boxes, and ladders positioned so that they block or narrow the aisle pathways in violation of the requirements of the 2010 Standards Section 403.5.1.

39.     Plaintiff Mullen has visited Defendant's facilities located at 760 Beaver Valley Mall Boulevard, Monaca, PA, including within the past month, and encountered unlawful and discriminatory interior access barriers including, but not necessarily limited to, merchandise displays, boxes, and ladders positioned so that they block or narrow the aisle pathways in violation of the requirements of the 2010 Standards Section 403.5.1.

40.     Plaintiffs' Investigator also separately examined the properties visited by Plaintiffs in March 2019 and encountered the same types of access barriers Plaintiffs have repeatedly encountered, as depicted in the following photographs:



*Figure 1 760 Beaver Valley Mall Boulevard*



*Figure 2 760 Beaver Valley Mall Boulevard*



*Figure 3 760 Beaver Valley Mall Boulevard*



*Figure 4 3306 Wilmington Road*



*Figure 5 3306 Wilmington Road*

41.     In addition, Plaintiffs' Investigator examined additional locations and determined the same problems existed that were present in the locations visited by Plaintiffs, as depicted in the following photographs:

a)  602 Moraine Pointe Plaza, Butler, PA



*Figure 6 602 Moraine Pointe Plaza*

17



*Figure 7 602 Moraine Pointe Plaza*



*Figure 8 602 Moraine Pointe Plaza*

b)  660 East Pittsburgh Street, Greensburg, PA



*Figure 9 660 East Pittsburgh Street*



*Figure 10 660 East Pittsburgh Street*



*Figure 11 660 East Pittsburgh Street*

c)  1513 Scalp Avenue, Johnstown, PA



*Figure 12 1513 Scalp Avenue*

d)  1570 Oakland Avenue, Indiana, PA



*Figure 13 1570 Oakland Avenue*



*Figure 14 1570 Oakland Avenue*



*Figure 15 1570 Oakland Avenue*

42.     As a result of Defendant's non-compliance with the ADA, Plaintiffs' rights to full and equal, non-discriminatory, and safe access to Defendant's goods and facilities have been denied.

43.     Plaintiffs will be deterred from returning to and fully and safely accessing Defendant's facilities so long as Defendant's facilities remain non-compliant, and so long

as Defendant continues to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendant's facilities.

44.     Nonetheless, Plaintiffs will continue to visit Defendant's locations that are close to their homes both to attempt to access the goods and services in those stores and to survey the stores for compliance with the ADA.

45.     Without injunctive relief, Plaintiffs will continue to be unable to fully and safely access Defendant's facilities in violation of their rights under the ADA.

46.     As individuals with mobility disabilities who are dependent upon a wheelchair, Plaintiffs are directly interested in whether public accommodations, like Defendant's facilities, have access barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

## II.     Defendant Denies Individuals With Disabilities Full and Equal Access to Their Facilities.

47.     Defendant is engaged in the ownership, management, operation, and development of retail stores throughout the United States, including, upon information and belief, approximately 300 stores across the United States.

48.     As the owner and manager of its properties, Defendant employs centralized policies, practices, and procedures with regard to the design, construction, alteration, maintenance, and operation of its facilities.

49.     However, as set forth herein, these policies, practices, and procedures are inadequate in that Defendant's facilities are operated and maintained in violation of the accessibility requirements of Title III of the ADA.

50.     As evidenced by the widespread inaccessibility of Defendant's stores visited by Plaintiffs and their investigator, absent a change in Defendant's corporate policies and practices, access barriers are likely to reoccur in Defendant's facilities even after they have been remediated in the first instance.

51.     Accordingly, Plaintiffs seek an injunction to remove the barriers currently present at Defendant's facilities and an injunction to modify the policies and practices that have created or allowed, and will create or allow, access barriers in Defendant's stores.

## CLASS ALLEGATIONS

52.     Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of themselves and the following nationwide class: all persons with qualified mobility disabilities who have attempted, or will attempt, to access the interior of any store owned or operated by Defendants within the United States and have, or will have, experienced access barriers in interior paths of travel.

53.     Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

54.     Typicality: Plaintiffs' claims are typical of the claims of the members of the class. The claims of Plaintiffs and members of the class are based on the same legal theories and arise from the same unlawful conduct.

55.     Common Questions of Fact and Law: There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they

all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's facilities and/or services due to Defendant's failure to make its facilities fully accessible and independently usable as above described. The questions of law and fact that are common to the class include:

    a.  Whether Defendant operates places of public accommodation and is subject to Title III of the ADA and its implementing regulations;

    b.  Whether storing merchandise in interior aisles of the stores makes the stores inaccessible to Plaintiffs and putative class members; and,

    c.  Whether Defendant's storage, stocking and setup policies and practices discriminate against Plaintiffs and putative class members in violation of Title III of the ADA and its implementing regulations.

56.    <u>Adequacy of Representation</u>: Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the members of the class. Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and they has no interests antagonistic to the members of the class. Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

57.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiffs and the class as a whole.

## CAUSE OF ACTION: VIOLATION OF THE ADA

58.     Defendant has failed, and continues to fail, to provide individuals who use wheelchairs or scooters with full and equal enjoyment of its facilities.

59.     Defendant has discriminated against Plaintiffs and the class in that Defendant has failed to make Defendant's facilities fully accessible to, and independently usable by, individuals who use wheelchairs or scooters in violation of 42 U.S.C. § 12182(a) as described above; Section 403.5.1 of the 210 Standards.

60.     Defendant's conduct is ongoing and continuous, and Plaintiffs have been harmed by Defendant's conduct.

61.     Unless Defendant is restrained from continuing its ongoing and continuous course of conduct, Defendant will continue to violate the ADA and will continue to inflict injury upon Plaintiffs and the class.

62.     Given that Defendant has not complied with the ADA's requirements to make Defendant's facilities fully accessible to, and independently usable by, individuals who use wheelchairs or scooters, Plaintiffs invoke their statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the members of the class, prays for:

a.     A declaratory judgment that Defendant is in violation of the specific requirements of Title III of the ADA, and the relevant implementing regulations of the ADA, in that Defendant's facilities are not fully accessible to and independently usable by individuals who use wheelchairs or scooters;

b.  A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that: (i) directs Defendant to take all steps necessary to remove the access barriers described above and to bring its facilities into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the facilities are fully accessible to, and independently usable by, individuals who use wheelchairs or scooters; (ii) directs Defendant to change its policies and practices to prevent the reoccurrence of access barriers post-remediation; and (iii) directs that Plaintiffs shall monitor Defendant's facilities to ensure that the injunctive relief ordered above remains in place.

c.  An Order certifying the class proposed by Plaintiffs, naming Plaintiffs as class representatives, and appointing their counsel as class counsel;

d.  Payment of costs of suit;

e.  Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and,

f.  The provision of whatever other relief the Court deems just, equitable, and appropriate.


Dated: March 14, 2019                    Respectfully submitted,

                                         **CARLSON LYNCH, LLP**

                                         */s/ R. Bruce Carlson*
                                         R. Bruce Carlson
                                         Kelly K. Iverson
                                         Elizabeth Pollock-Avery
                                         1133 Penn Avenue, 5th Floor
                                         Pittsburgh PA, 15222
                                         (412) 322-9243 (Tel.)
                                         bcarlson@carlsonlynch.com
                                         kiverson@carlsonlynch.com
                                         eavery@carlsonlynch.com

                                         *Attorneys for Plaintiffs*