**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

IRMA ALLEN and BARTLEY MICHAEL
MULLEN, JR., individually and on behalf of all
others similarly situated,

                Plaintiffs,

     v.

OLLIE'S BARGAIN OUTLET, INC.,

              Defendant.

Case No.: 2:19-cv-00281-NBF

ELECTRONICALLY FILED

**DEFENDANT'S OPPOSITION TO**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**FOX ROTHSCHILD LLP**
Richard L. Etter
ID No. PA 92835
500 Grant Street, Suite 2500
Pittsburgh, PA 15219
Telephone: (412) 394-5529
retter@foxrothschild.com

*Counsel for Defendant Ollie's Bargain Outlet, Inc.*

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF FACTS....................................................................................2

       A.     Ollie's Bargain Outlet, Inc..........................................................................2

       B.     Plaintiff Irma Allen......................................................................................4

       C.     Plaintiff Bartley Michael Mullen, Jr............................................................5

       D.     The "Investigations" Of Ollie's Stores......................................................5

III.   ARGUMENT.........................................................................................................6

       A.     Plaintiffs' Motion Should Be Denied Because They Lack Standing. ...........6

              1.     Plaintiffs have failed to establish that they are at risk of suffering an
                     imminent future injury to a legally protected right. ..............................6

              2.     The access barriers Plaintiffs experienced are not fairly traceable to any
                     Ollie's policy or procedure....................................................................9

              3.     Plaintiffs have failed to prove that an injunction exists that is likely to
                     prevent all access barriers in interior paths of travel at the New Castle
                     and Monaca stores. ...............................................................................10

       B.     Plaintiffs' Motion Should Be Denied Because They Have Failed To Prove That
              They Have Met The Requirements Of Rule 23(a)........................................10

              1.     Plaintiffs have failed to prove that the number of mobility disabled
                     individuals who experienced access barriers in interior paths of travel
                     at Ollie's stores makes joinder impracticable.....................................11

              2.     Plaintiffs have failed to prove the existence of common questions the
                     answers to which will resolve issues of liability for all members of the
                     proposed class at once............................................................................13

              3.     Plaintiffs have failed to prove that the access barriers they experienced
                     and the access barriers at Ollie's other stores were caused by the same
                     Ollie's policy or procedure....................................................................19

       C.     Plaintiffs' Motion Should Be Denied Because They Have Failed To Prove That
              They Have Met The Requirements Of Rule 23(b)(2). ..................................20

IV.    CONCLUSION......................................................................................................22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Kohl's Corp.*,
  No. 12-00822, 2013 WL 1874812 (W.D. Pa. May 3, 2013) ...................................................7

*Armstrong v. Davis*,
  275 F.3d 849 (9th Cir. 2001)...............................................................................................13

*Baby Neal for & by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ............................................................................................ 19, 20

*Belitskus v. Pizzingrilli*,
  343 F.3d 632 (3d Cir. 2003) ................................................................................................21

*Camarillo v. Carrols Corp.*,
  518 F.3d 153 (2d Cir. 2008)................................................................................................14

*Castaneda v. Burger King Corp.*,
  264 F.R.D. 557 (N.D. Cal. 2009) .......................................................................................18

*Chapman v. Pier 1 Imports*,
  779 F.3d 1001 (9th Cir. 2015) ............................................................................................18

*Colorado Cross-Disability Coalition v. Too (Delaware) Inc.*,
  344 F. Supp. 2d 707, 715 (D. Colo. 2004) .........................................................................16

*Dempsey v. Pistol Pete's Beef N Beer, LLC*,
  2009 WL 3584597 (D.N.J. Oct. 26, 2009).............................................................................8

*Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*,
  539 F.3d 199, 208 (3d Cir. 2008) ........................................................................................12

*Dudley v. Hannaford Bros. Co.*,
  333 F.3d 299, 309 (1st Cir. 2003)........................................................................................15

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
  431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).........................................................19

*Finkelman v. Nat'l Football League*,
  810 F.3d 187, 193-94 (3d Cir. 2016)................................................................................9, 10

*Fortyune v. Am. Multi-Cinema, Inc.*,
  364 F.3d 1075, 1082 (9th Cir. 2004) ...............................................................................14-15

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs (TOC), Inc.,*
528 U.S. 167 (2000) ............................................................................................6

*Gates v. Rohm and Haas Co.,*
655 F.3d 255 (3d Cir. 2011) ............................................................................21

*Gray v. Golden Gate Nat. Recreational Areas,*
279 F.R.D. 501 (N.D. Cal. 2011) ....................................................................19

*Hayes v. Wal-Mart Stores, Inc.,*
725 F.3d 349 (3d Cir. 2013) ............................................................................11

*Heinzl v. Cracker Barrell Old Country Stores, Inc.,*
2016 WL 2347367, at *18 (W.D. Pa. Jan. 27, 2016) ......................................22

*Hernandez v. AutoZone, Inc.,*
323 F.R.D. 496 (E.D.N.Y. 2018) ...............................................................19, 22

*Hohider v. United Parcel Serv., Inc.,*
574 F.3d 169, 196-97 (3d Cir. 2009) ...............................................................14

*Holmes v. Pension Plan of Bethlehem Steel Corp.,*
213 F.3d 124 (3d Cir. 2000) ..............................................................................6

*Hoxworth v. Blinder, Robinson & Co.,*
980 F.2d 912 (3d Cir. 1992) ............................................................................19

*In re Hydrogen Peroxide Antitrust Litig.,*
552 F.3d 305, 317-18 (3d Cir. 2008) ...............................................................14

*Karczewski v. DCH Mission Valley LLC,*
862 F.3d 1006, 1010 (9th Cir. 2017) ...............................................................14

*Lewis v. Casey,*
518 U.S. 343, 116 S.Ct. 2174, 518 U.S. 343 (1996) ......................................13

*Lieber v. Macy's W., Inc.,*
80 F. Supp. 2d 1065, 1077-79 (N.D. Cal. 1999) .............................................16

*Lucas v. Kmart Corp.,*
2005 WL 1648182 (D. Colo. July 13, 2005) ...................................................19

*Lujan v. Defenders of Wildlife,*
504 U.S. 555, 561, 112 S.Ct. 2130 (1992) .....................................................6, 8

*McNair v. Synapse Grp. Inc.,*
672 F.3d 213 (3d Cir. 2012) ..............................................................................6

*Mielo v. Bob Evans Farms, Inc.*,
  No. 14-1036, 2015 WL 1299815 (W.D. Pa. Mar. 23, 2015)..........................................8, 18

*Mielo v. Steak 'n Shake Operations, Inc.*,
  897 F.3d 467, 478 (3d Cir. 2018) ................................. 6, 8, 9, 10, 11, 13, 9, 21, 22

*Mielo v. Steak 'N Shake Operations, Inc.*,
  No. 15-180, 2019 WL 1330836 (W.D. Pa. Mar. 25, 2019).....................................7, 8, 14, 19, 21, 22

*Molski v. M.J. Cable, Inc.*,
  481 F.3d 724 (9th Cir. 2007)...........................................................................14

*O'Shea v. Littleton*,
  414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L. Ed. 2d 674 (1974)..........................................8

*Park v. Ralph's Grocery Co.*,
  254 F.R.D. 112, 120 (C.D. Cal. 2008) .................................................................19

*Rodriguez v. Investco, LLC*,
  305 F. Supp. 2d 1278, 1282-83 (M.D. Fla. 2004) ......................................................16

*Semenko v. Wendy's Int'l, Inc.*,
  2013 WL 1568407 (W.D. Pa. April 12, 2013) ..........................................................18

*Shaywitz v. Am. Bd. of Psychiatry & Neurology*,
  848 F. Supp. 2d 460, 467 (S.D.N.Y. 2012) ............................................................15

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540, 1547 (2016)................................................................. 6, 9, 10

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001) .........................................................................11

*Thomas v. Kohl's Corp.*,
  No. 17-cv-5857, 2018 WL 704691, at *3 (N.D. Ill. Feb. 5, 2018)........................................16

*Wagner v. White Castle Sys., Inc.*,
  309 F.R.D. 425 (S.D. Ohio 2015) ....................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011)...............................10, 19, 20, 21

**Statutes**

42 U.S.C. § 12182(a) ...............................................................................14

42 U.S.C. § 12182(b)(2) ...................................................................... 7, 14, 15, 16, 17

**Other Authorities**

Fed. R. Civ. P. 65(d)(1)(B), (C) ..................................................................................21

Federal Rules of Civil Procedure Rule 23(a) ................................................1, 2, 10, 20

Rule 23 .......................................................................................................10, 20, 22

Rule 23(a)(1) .......................................................................................................11

Rule 23(a)(1)'s .......................................................................................................11

Rule 23(a), and (2) ................................................................................10, 13, 19

Rule 23(a)(3) ................................................................................................19, 20

Rule 23(b) .......................................................................................................10

Rule 23(b)(2) ................................................................................2, 20, 21, 22

## I.    <u>INTRODUCTION</u>

Plaintiffs Irma Allen and Bartley Michael Mullen, Jr. (collectively, "Plaintiffs") filed a putative class action complaint alleging that Ollie's Bargain Outlet, Inc. ("Ollie's") discriminated against them because of their mobility disabilities by denying them access to goods and facilities in violation of Title III of the Americans with Disabilities Act ("Title III").  Specifically, Plaintiffs allege that Ollie's violated Title III because its policies and procedures fail to prevent access barriers from occurring in interior paths of travel.  Relying on little more than their own conclusory assertions, Plaintiffs now ask this Court to certify a class of "[a]ll persons with qualified mobility disabilities who have attempted, or will attempt, to access the goods and services of any store owned or operated by Defendant within the United States and have, or will have, experienced access barriers in interior paths of travel."

Plaintiffs' motion for class certification should be denied because they lack standing. Plaintiffs have not suffered an invasion of a legally protected right because Title III does not require retailers, like Ollie's, to adopt policies or procedures to prevent access barriers from occurring in interior paths of travel.  Even if it did, Plaintiffs have failed to present evidence sufficient to fairly trace the access barriers they experienced to any Ollie's policies or procedures.  In addition, Plaintiffs cannot establish that Ollie's policies and practices present an imminent risk of future injury because they testified that they have no plans to visit any Ollie's stores in the future.  Further, Plaintiffs cannot show that the injunctive relief they seek—unidentified modifications to unidentified policies and procedures—would prevent access barriers from occurring in the interior aisles of the two Ollie's stores they have visited.

Plaintiffs motion should also be denied because Plaintiffs have failed to prove by a preponderance of the evidence that they have met the requirements of Rule 23 of the Federal Rules of Civil Procedure.  Plaintiffs have failed to prove numerosity because the evidence they present

requires the Court to resort to impermissible speculation to determine the number of individuals with qualified mobility disabilities who have shopped at an Ollie's store <u>and</u> been denied access to Ollie's facilities or products.  Plaintiffs have failed to prove commonality because they cannot identify any common questions the answers to which would resolve an issue of liability for all of the members of the proposed class at once.  Plaintiffs have failed to prove typicality because they cannot show that the access barriers they experienced and the access barriers that occurred at Ollie's other stores were caused by the same Ollie's policy or procedure.

Even if they could somehow satisfy the requirements of Rule 23(a), Plaintiffs have failed to prove that this case is appropriate for class treatment under Rule 23(b)(2) because they cannot show that a single permissible injunction exists that would prevent access barriers from occurring in the interior paths of travel at all of Ollie's more than 350 stores.  Instead, determining the existence of a Title III violation at each Ollie's store will require the Court to analyze and answer store- and barrier-specific questions.  Thus, to resolve the claims of all proposed class members at once would require a broad "comply with Title III" injunction, which is impermissible under Rule 23(b)(2). Accordingly, Plaintiffs' motion for class certification should be denied.

## II.   STATEMENT OF FACTS

### A.   Ollie's Bargain Outlet, Inc.

Ollie's operates over 350 stores throughout the United States.  (ECF No. 51-11 at 3-16.) Ollie's relies on its store opening team and the permit process of local agencies to ensure its stores are designed in compliance with applicable laws, including the ADA.  (Deposition Transcript of 30(b)(6) Representative Scott Osborne ("Osborne Dep.") at 51:17-56:5.)[1]

---

[1] The cited excerpts of Scott Osborne's deposition are attached as Exhibit A.

Although they do not explicitly mention the ADA, Ollie's has adopted Visual Store Standards, a Daily Facilities Maintenance Scan, a Daily Store Safety Scan, a Monthly Maintenance Scan, and a "Yes, I Can" program to ensure that its stores and products remain accessible to all customers.  (*Id.* at 38:16-39:25, 166:21-167:13.)  Each store has a Store Team Leader who is responsible for ensuring compliance with the Visual Store Standards.  (*Id.* at 29:22-30:17.)  Ollie's provides training and instruction on the Visual Store Standards.  (*Id.* at 63:11-64:13.)

*Every day before the store opens at 9 a.m.*, the Store Team Leader is required to complete a Daily Facilities Maintenance Scan and a Daily Store Safety Scan.  (*Id.* at 33:4-17, 95:10-96:4, 107:14-108:24.)  As part of the Daily Facilities Maintenance Scan, the Store Team Leader ensures that all shopping carts are returned to the corral and that there are no shopping carts in the aisles.  (*Id.* at 95:10-96:4, ECF No. 51-12 (Daily Facilities Maintenance Scan).)  As part of the Daily Store Safety Scan, the Store Team Leader ensures that "[a]ll walkways (floors, aisles, sidewalks, etc.) are free of debris, trash, fallen merchandise, spilled/leaked liquids, fertilizer (spring/summer), and ice/snow (winter)."  (*Id.* at 107:14-108:24, ECF No. 51-13 (Daily Store Safety Scan).)  *Throughout each day*, the Store Team Leader requires employees to perform recovery walks to collect merchandise, shopping carts, and other items that may have been moved by customers and return them to their proper locations.  (*Id.* at 33:12-14, 34:2-35:22, 194:5-195:12.)  *At the end of each day*, the Store Team Leader is required to ensure that all floors are swept and mopped daily.  (*Id.* at 89:16-90:7.)  *Every month*, Ollie's requires every Store Team Leader to complete a Monthly Maintenance Scan and take immediate corrective action to address any identified issues.  (*Id.* at 33:4-17, 114:11-116:11.)  As part of the Monthly Maintenance Scan, the Store Team Leader confirms that aisles are clear and that a wheelchair can pass easily through each aisle.  (*Id.* at 115:10-13, ECF No. 51-14 (Monthly Maintenance Scan).)

Ollie's "Yes, I Can" program, which applies to all employees at all times, requires that employees retrieve a product for any customer who is unable to access it on their own, regardless of the reason.  (*Id.* at 166:21-167:13.)

B.      **Plaintiff Irma Allen**

Plaintiff Allen has had a mobility disability requiring the use of a wheelchair since 2010. (Deposition Transcript of Irma Allen ("Allen Dep.") at 14:1-9, 17:18-19:2, 22:21-22.)[2]  Since becoming disabled, the only Ollie's that Allen has visited is the store in New Castle, Pennsylvania. (*Id.* at 23:17-24:22.)  Allen visited the New Castle store on three to five occasions, but only has a good memory of her visits in October 2016, April 2019, and June 2019.  (*Id.* at 26:15-20, 45:6-10.) During her October 2016 visit, Allen was unable to get from the parking lot into the store because of a seasonal display of vases and flower pots that was outside the front of the store.  (*Id.* at 32:3-11, 34:20-35:1.)[3]  During her April 2019 visit, the only aisle Allen attempted to access was the main aisle and she was unable to access that aisle because of carts and boxes with products for sale.  (*Id.* at 41:19-43:21.)  During her last visit in June 2019, Allen sat in the front of the store and did not even attempt to access any aisles or products.  (*Id.* at 41:12-18.)  Allen does not have any plans to visit any Ollie's stores in the future.  (*Id.* at 63:22-64:9.)

---

[2] The cited excerpts of Irma Allen's deposition are attached as Exhibit B.

[3] Despite testifying that she never got past the seasonal display outside the store, Allen testified that during her October 2016 visit she experienced the following access barriers: (1) clothes on the floor and clothing racks 6 inches apart in the clothing department, and (2) displays of cleaning items in the cleaning supplies aisle.  (*Id.* at 29:23-35:20.)  Notably, Allen admitted that the barriers in the clothing department prevented access by disabled and non-disabled individuals alike.  (*Id.* at 30:24-32:2.)

### C.     Plaintiff Bartley Michael Mullen, Jr.

Plaintiff Mullen has had a mobility disability requiring the use of a wheelchair since 2009. (Deposition Transcript of Bartley Michael Mullen, Jr. ("Mullen Dep.") at 16:21-17:19.)[4]  Mullen has visited two Ollie's stores: the New Castle store and the store in Monaca, Pennsylvania.  (*Id.* at 20:24-21:18.)  Mullen last visited the New Castle store in 2018 or 2019 (*id.* at 26:17-20), and last visited the Monaca store in March/April 2019.  (*Id.* at 36:22-37:9.)  Mullen testified that during his visits to the New Castle and Monaca stores he experienced access barriers in the form of "center posts" and "overstock in the aisles."  (*Id.* at 36:22-38:18.)  However, Mullen admitted that he was able to find an alternative route around each of these access barriers.  (*Id.* at 26:10-16.)  Mullen does not have any plans to visit any Ollie's stores in the future.  (*Id.* at 61:4-23.)

### D.     The "Investigations" Of Ollie's Stores.

Plaintiffs' investigators, Quinn Riordan and Kirk Taylor, do not possess any professional credentials, licenses, or certificates relating to the ADA and have only received one day of training on investigations of interior paths of travel.  (Deposition Transcript of Quinn Riordan ("Riordan Dep.") at 10:7-23, 23:13-25:25; Deposition Transcript of Kirk Taylor ("Taylor Dep.") at 17:6-15.)[5] Their "investigations" of Ollie's stores involved nothing more than measuring and recording every instance in which an area of clearance measured less than 32 inches wide.  (Riordan Dep. at 27:1-28:9; Taylor Dep. at 14:25-15:21.)  Plaintiffs' investigators did not determine whether each non-conforming measurement was located on a path of travel or along an accessible route.  (Reardon Dep. at 44:22-45:1; Taylor Dep. at 39:19-40:5.)  They did not determine whether any alleged access barrier was temporary or involved movable displays.  (Reardon Dep. at 49:3-50:3; Taylor Dep. at

---

[4] The cited excerpts of Bartley Michael Mullen, Jr.'s deposition are attached as Exhibit C.

[5] The cited excerpts of Quinn Riordan and Kirk Taylor's depositions are attached as Exhibits D and E, respectively.

39:19-40:5, 43:22-25.)  And they did not determine whether any access barrier was caused by restocking, maintenance, or the acts of a customer or a third-party as opposed to Ollie's.  (Reardon Dep. at 48:9-50:3, 93:3-7; Taylor Dep. at 39:19-40:5.)  In fact, they did not determine the cause of any alleged access barrier.  (Reardon Dep. at 48:9-12; Taylor Dep. at 39:19-22.)

## III.   ARGUMENT

### A.   Plaintiffs' Motion Should Be Denied Because They Lack Standing.

To establish Article III standing, "a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Mielo v. Steak 'n Shake Operations, Inc.,* 897 F.3d 467, 478 (3d Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016))  The plaintiff "bears the burden of establishing these elements."  *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).  In a proposed class action, Article III standing must be satisfied by at least one named plaintiff.  *See McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (holding that "[i]n the class action context, that requirement must be satisfied by at least one named plaintiff" (internal quotation marks and citations omitted)); *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000) ("[A] plaintiff who lacks the personalized, redressable injury required for standing to assert claims on his own behalf would also lack standing to assert similar claims on behalf of a class.").

### 1.   Plaintiffs have failed to establish that they are at risk of suffering an imminent future injury to a legally protected right.

To establish an injury in fact, a plaintiff must prove: (1) "that he or she suffered an invasion of a legally protected interest," (2) "that the injury is both concrete and particularized," and (3) "that his or her injury is actual or imminent, not conjectural or hypothetical." *Mielo,* 897 F.3d at 478 (internal citation and quotations omitted).  Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges a "real and immediate"—as opposed to a

merely "conjectural or hypothetical"—threat of *future* injury.  *Anderson v. Kohl's Corp.*, No. 12-822, 2013 WL 1874812, at *4 (W.D. Pa. May 3, 2013).

As an initial matter, Plaintiffs have failed to cite any provision of Title III or its implementing regulations that gives an individual a legal right to require a retailer to establish policies and procedures to prevent access barriers from occurring in interior paths of travel.  Nor can they because Title III does not require public accommodations to adopt policies to prevent access barriers from occurring in paths of travel.  *See Mielo v. Steak 'N Shake Operations, Inc.*, No. 15-180, 2019 WL 1330836, at *12–13 (W.D. Pa. Mar. 25, 2019) (holding as a matter of law that Title III does not require the adoption of policies to eliminate the occurrence of access barriers).

Indeed, Title III does not even require public accommodations to remove all existing barriers.  *See* 42 U.S.C. § 12182(b)(2)(A)(v) (stating that where barrier removal is not readily achievable, retailers should provide access to their merchandise "through alternative methods if such methods are readily achievable."); 28 C.F.R. § 36.305(b)(2) ("Examples of alternatives to barrier removal include . . . [r]etrieving merchandise from inaccessible shelves or racks."); *see also* 56 Fed. Reg. 35544, 35570 (July 26, 1991) ("[I]f it is not readily achievable for a retail store . . . to rearrange display racks to provide accessible aisles, the store must, if readily achievable, provide a clerk . . . to retrieve inaccessible merchandise.").  As the Department of Justice's commentaries to Title III's implementing regulations make clear,  it is not a violation of Title III for "boxes, potted plants, display racks, or other items" to be placed such that they cause routes to be "inaccessible to people who use wheelchairs" provided that these moveable items "are placed there temporarily."  73 Fed. Reg. 34,508, 34,523 (June 17, 2008) (discussing the application of 28 C.F.R. § 36.211(b) to moveable access barriers).[6]

---

[6] Plaintiffs also cannot establish liability based on Ollie's alleged failure to train.  For their part, Plaintiffs fail to cite any provision of Title III requiring public accommodations to implement ADA

Even if Title III did require retailers to adopt a policy to ensure that interior paths of travel remain free from access barriers, "the mere nonexistence of such a policy would not afford [Plaintiffs] a basis to establish standing." *Mielo*, 897 F.3d at 479.  Rather, Plaintiffs "would still need to show how the lack of a policy resulted in a concrete harm that was particular to them." *Id.* Plaintiffs have not offered any evidence that could enable a factfinder to determine which Ollie's policy or procedure, if any, caused the access barriers Plaintiffs experienced.  *See Mielo*, 2019 WL 1330836, at *12–13 (granting summary judgment for defendant and noting the Third Circuit's "skepticism that the lack of a corporate maintenance policy would provide plaintiffs with standing in such a circumstance.")

Moreover, a plaintiff seeking injunctive relief must show continuing, adverse effects from the illegal conduct.  *See Mielo v. Bob Evans Farms, Inc.*, No. 14-1036, 2015 WL 1299815, at *9 (W.D. Pa. Mar. 23, 2015) (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L. Ed. 2d 674 (1974)); *see also Lujan,* 504 U.S. at 564, 112 S.Ct. 2130 (holding that plaintiff's intention to return "some day," without any concrete plans, cannot support a finding of "actual or imminent" injury); *Dempsey v. Pistol Pete's Beef N Beer, LLC,* 2009 WL 3584597, at *4 (D.N.J. Oct. 26, 2009) (same).  Here, Plaintiffs cannot claim that Ollie's policies and procedures are likely to cause them to suffer imminent future injury because Plaintiffs both testified that they have no plans to return to any Ollie's store.  (Allen Dep. 63:22-64:9; Mullen Dep. at 61:4-23.)  Accordingly, Plaintiffs have failed to establish the existence of an injury in fact.

---

training.  In any event, notwithstanding Plaintiffs' repeated assertions to the contrary (*see* Pls.' Br. at 12, 21-22), the deposition testimony they cite shows that Mr. Osborne was never asked, and never testified about, whether Ollie's provided employees information about the requirements of the ADA, whether Ollie's advised employees how to identify ADA issues, or whether Ollie's instructed employees on how to ensure that a store is ADA compliant.  (*See* Osborne Dep. at 20:21-21:23, 58:6-24, 122:21-123:18, 152:9-154:3.)

### 2. The access barriers Plaintiffs experienced are not fairly traceable to any Ollie's policy or procedure.

"The second element of standing requires plaintiffs to establish that their alleged injury in fact 'is fairly traceable to the challenged conduct of the defendant.'" *Mielo*, 897 F.3d at 480-81 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). "This requirement is akin to 'but for' causation in tort and may be satisfied . . . provided that there is a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant." *Id.* (quoting *Finkelman v. Nat'l Football League,* 810 F.3d 187, 193-94 (3d Cir. 2016)).

The mere existence of access barriers at Ollie's stores (regardless of the number of stores) is insufficient to show that the barriers Plaintiffs experienced at the New Castle and Monaca stores are traceable to an Ollie's policy or procedure. And Plaintiffs have failed to offer any evidence to prove that "but for" an identifiable Ollie's policy or procedure they would not have experienced access barriers at the New Castle or Monaca stores. They do not identify a single provision of the Visual Store Standards that they contend violates Title III or caused the New Castle and Monaca stores to violate Title III. Nor do they identify any such allegedly unlawful provisions on the Daily Facilities Maintenance Scan, Daily Store Safety Scan, or Monthly Maintenance Scan. In the absence of such evidence, Plaintiffs cannot show that the access barriers they experienced are fairly traceable to a specific Ollie's policy or procedure.[7]

---

[7] Based on the evidence of record, the possible cause of such barriers include (i) a third party's construction of the store, (ii) the store operating team's design and layout of the store, (iii) a local government agency's inadequate compliance audit, (iv) subsequent alterations to an area or path of travel in the store, (v) a store manager's failure to follow the Visual Store Standards, Daily Facilities Maintenance Scan, Daily Store Safety Scan, or Monthly Maintenance Scan, (vi) a rogue employee's intentional violation of the Visual Store Standards, Daily Facilities Maintenance Scan, Daily Store Safety Scan, or Monthly Maintenance Scan, (vii) an employee using a cart to restock product displays, (viii) the temporary placement of merchandise, boxes, or a product display during the setup or teardown of the display, (ix) a customer moving merchandise, boxes, or a product display, (xi) a customer abandoning a shopping cart or merchandise, or (xii) a myriad of other causes.

3. **Plaintiffs have failed to prove that an injunction exists that is likely to prevent all access barriers in interior paths of travel at the New Castle and Monaca stores.**

"The third standing element requires a plaintiff to show that their injury 'is likely to be redressed by a favorable judicial decision.'" *Mielo*, 897 F.3d at 481 (quoting *Spokeo*, 136 S.Ct. at 1547). "This requires the plaintiff to show that it is 'likely, as opposed to merely speculative,' that the alleged injury will be redressed by a favorable decision." *Id.* (quoting *Finkelman*, 810 F.3d at 194).

Plaintiffs have failed to prove that the injunctive relief they seek—unspecified modifications to unidentified Ollie's policies and procedures—is likely to prevent future access barriers from occurring in the interior aisles of Ollie's stores. Plaintiffs do not explain how the Visual Store Standards could be modified to prevent access barriers from occurring at the New Castle and Monaca stores. They likewise fail to explain how Ollie's training program or the Daily Facilities Maintenance Scan, Daily Store Safety Scan, or Monthly Maintenance Scan form could be changed to prevent access barriers from occurring at those stores in the future. Accordingly, Plaintiffs have failed to establish Article III standing.

B. **Plaintiffs' Motion Should Be Denied Because They Have Failed To Prove That They Have Met The Requirements Of Rule 23(a).**

A plaintiff wishing to bring a claim as a class action must (1) satisfy the explicit requirements set forth in Rule 23(a), and (2) establish that her claim fits within one of the three types of classes set forth in Rule 23(b). *Mielo*, 897 F.3d at 482, 490. Rule 23 "does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Instead, a plaintiff must "prove" that the Rule 23 requirements have been met. *Id.* This "calls for a rigorous analysis that usually requires courts to make factual findings and legal conclusions that overlap the underlying merits of the suit." *Mielo*, 897 F.3d at 482 (citing *Dukes*, 564 U.S. at 350–51). If, after such rigorous analysis, the court "harbor[s] doubt as to whether a plaintiff has carried her burden under Rule 23, the class should not be certified." *Id.* at 483.

1.     **Plaintiffs have failed to prove that the number of mobility
disabled individuals who experienced access barriers in interior
paths of travel at Ollie's stores makes joinder impracticable.**

Rule 23(a)(1) requires a plaintiff to furnish sufficient evidence to enable the Court to make a

factual determination, without resorting to impermissible speculation, that the proposed class is so

numerous that joinder of all members is impracticable.  *See* Fed. R. Civ. P. 23(a)(1); *see also Mielo*, 897

F.3d at 484.  Although "[n]o minimum number of plaintiffs is required to maintain a suit as a class

action," a plaintiff in this circuit can generally satisfy Rule 23(a)(1)'s numerosity requirement by

establishing "that the potential number of plaintiffs exceeds 40."  *Stewart v. Abraham*, 275 F.3d 220,

226–27 (3d Cir. 2001).  In the absence of direct evidence of the number of class members, "a

plaintiff must show sufficient circumstantial evidence specific to the … problems, parties, and

geographic areas actually covered by the class definition to allow a district court to make a factual

finding."  *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 357 (3d Cir. 2013).  Although it may be

"tempting to assume" that a class satisfies Rule 23(a)(1) because its members will be drawn as a

subset from a larger pool, the Third Circuit "has rejected the idea that giving in to such temptation

could excuse speculation."  *Mielo*, 897 F.3d at 485-86 (holding "where a putative class is some subset

of a larger pool, the trial court may not infer numerosity from the number in the larger pool

alone.").[8]

Plaintiffs have failed to present sufficient circumstantial evidence to prove that the proposed

class is so numerous that joinder is impracticable.  Although Plaintiffs' statistical evidence provides

more granular information than the statistical evidence found insufficient in *Mielo*, it still requires the

Court to resort to impermissible speculation to infer numerosity based on the number of individuals

---

[8] Plaintiffs suggest that Rule 23(a)(1) is easier to meet when a plaintiff is seeking injunctive relief, and
cite *Mielo* in support.  (Pls.' Br. at 15-16.)  To the contrary, in *Mielo*, the Third Circuit held that
"[w]hether a plaintiff seeks injunctive or monetary relief, her Rule 23(a)(1) burden remains the
same."  *Id.*, 897 F.3d at 487.

in a larger pool, *i.e.* the number of individuals with mobility disabilities residing in the states and zip codes where Ollie's stores are located.  None of the census data provided by Plaintiffs predicts the number of individuals with mobility disabilities who are likely to experience an access barrier at an Ollie's store.  Further, that need to speculate is not eliminated, or even reduced, by the photos of the of 16 individuals in wheelchairs because the Court must speculate as to whether the individuals in the photos have mobility disabilities simply because they use a wheelchair.  Finally, the emails do not impact the need to resort to impermissible speculation because the emails are offered to prove that the authors have mobility disabilities and experienced access barriers at Ollie's stores, and the emails are, therefore, inadmissible hearsay.

Even if the emails were admissible, the fact that—since October 21, 2015—only 11 wheelchair users have used Ollie's electronic complaint processes to report alleged access barriers at Ollie's more than 350 stores does not suggest that the proposed class is so numerous that joinder is impracticable.  Quite the opposite, such evidence suggests that there are very few mobility disabled individuals who have experienced access barriers at Ollie's stores.  An inference that is aligned with Plaintiffs' testimony that, other than each other, they do not know of any disabled individuals who shop at Ollie's stores (Allen Dep. at 135:13-24; Mullen Dep. at 47:2-25), and further aligned with the fact that Plaintiffs' investigators never witnessed a single mobility disabled individual experience an access barrier at an Ollie's store.  (Riordan Dep. at 59:17-21; Taylor Dep. at 49:4-13.)[9]

Thus, the evidence that Plaintiffs have provided does not permit the Court to determine the number of mobility disabled individuals who have shopped at an Ollie's store—much less the

---

[9] In addition, two of the individuals reported access barriers that occurred outside of the applicable two-year statute of limitations.  (*Id.* at 16, 17.)  Because the ADA was enacted prior to the effective date of the default four-year statute of limitations for federal statutes, Pennsylvania's two-year statute of limitations for personal injury claims applies.  *See Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008).

number who have experienced access barriers in the interior paths of travel—without relying on impermissible speculation.  *See Mielo*, 897 F.3d at 486.  This might explain why Plaintiffs do not even attempt to forecast the number of proposed class members.  In any event, Plaintiffs have failed to meet their burden under Rule 23(a)(1).  *Id.*

> ## 2. Plaintiffs have failed to prove the existence of common questions the answers to which will resolve issues of liability for all members of the proposed class at once.

Rule 23(a)(2) requires Plaintiffs to prove that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The Supreme Court has made clear that "[w]hat matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350.  To meet the requirements of Rule 23(a)(2), the common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  Plaintiffs acknowledge that proof of widespread violations of Title III is a necessary prerequisite to relief against company-wide policies and practices.  (Pls.' Brief at 19 (citing *Armstrong v. Davis*, 275 F.3d 849, 870–71 (9th Cir. 2001) and *Lewis v. Casey*, 518 U.S. 343 (1996).)  Thus, Plaintiffs must demonstrate that their injury is "attributable to system-wide policies or practices," and that similar violations are "in fact widespread enough to justify system wide relief." *Armstrong*, 275 F.3d at 870 (quoting *Lewis*, 518 U.S. at 359).

Plaintiffs cannot meet the requirements of Rule 23(a)(2) by alleging, or even establishing, that Ollie's applied a common policy to all of its stores because the existence or non-existence of such a policy does not resolve the liability question as to all proposed class members.  As discussed above, Title III does not require retailers, like Ollie's, to adopt policies or procedures to prevent access barriers in interior paths of travel.  Indeed, Title III does not even require a public

accommodation to adopt policies or procedures to inspect for and remove existing access barriers. *See Mielo*, 2019 WL 1330836, at *12–13 (holding as a matter of law that Title III does not require the adoption of policies to eliminate the occurrence of access barriers).

Instead, it is necessary to look to at the elements Plaintiffs must prove to establish unlawful discrimination under Title III. *See Hohider v. United Parcel Serv., Inc.,* 574 F.3d 169, 196-97 (3d Cir. 2009) ("Evaluation of what substantive elements are necessary to prove plaintiffs' theories of discrimination . . . [is] properly undertaken at [the class certification] stage.); *see also In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 317-18 (3d Cir. 2008) (holding that the court's rigorous analysis may "consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take.").

Title III of the ADA provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To prevail on a claim under Title III, a plaintiff must show (1) that he is disabled within the meaning of the ADA; (2) that the defendant owns, leases, or operates a place of public accommodation; and (3) that the defendant discriminated against him by denying him a full and equal opportunity to enjoy the defendant's products or services. *See Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

Plaintiffs also cannot meet the requirements of Rule 23(a)(2) by arguing that their barrier removal claims are covered by 42 U.S.C. § 12182(b)(2)(A)(ii).[10] Title III, its legislative history, its

---

[10] Significantly, to the extent their claims are governed by 42 U.S.C. § 12182(b)(2)(A)(ii), Plaintiffs' motion should be denied because they have not requested—or even identified—a reasonable modification that would prevent access barriers from occurring in Ollie's stores. *See Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1010 (9th Cir. 2017) (citing *Fortyune v. Am. Multi-Cinema,*

implementing regulations, and established case law all make clear that temporary or movable

product displays and other non-fixed obstructions that narrow interior aisles are regulated by

42 U.S.C. § 12182(b)(2)(A)(iv).  For existing facilities, Title III requires public accommodations "to

remove architectural barriers . . . where such removal is readily achievable."  42 U.S.C. §

12182(b)(2)(A)(iv).  Title III's legislative history shows that Congress intended to regulate temporary

or moveable displays under 42 U.S.C. § 12182(b)(2)(A)(iv).  *See* H.R. Rep. No. 485, 101st Cong., 2nd

Sess., pt. 2, at 110, *reprinted in* 1990 U.S.C.C.A.N. 303, 393 ("[Section 12182(b)(2)(A)(iv)] may require

the removal of physical barriers, including those created by the arrangement or location of . . .

movable structures [such] as furniture, equipment and display racks.").[11]

Title III's implementing regulations further support that 42 U.S.C. § 12182(b)(2)(A)(iv)

applies to temporary or movable product displays and other non-fixed obstructions that narrow

interior aisles.  *See* 28 C.F.R. § 36.304(b)(4) (identifying "[r]earranging tables, chairs, vending

machines, display racks, and other furniture" as a step that might be "readily achievable"); *id.* at

§ 36.304(c)(2) (identifying "adjusting the layout of display racks, rearranging tables" among the

---

*Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004))(To prevail on a claim under 42 U.S.C. § 12182(b)(2)(A)(ii), a plaintiff must establish that: (1) he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability.); *see also Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 467 (S.D.N.Y. 2012) (citing *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 309 (1st Cir. 2003)) ("Title III's requirement that private entities make 'reasonable accommodations' for disabled individuals would be rendered meaningless if the entity had no basis for knowing (1) what accommodations the [plaintiff] was seeking, and (2) whether those accommodations were reasonable in light of the disability and the test.")

[11] Title III's legislative history also belies Plaintiffs' contention that Ollie's is required to ensure that every product in its stores is independently accessible by people with mobility disabilities.  (Pls.' Br. at 12.)  To the contrary, "[t]he purpose of [12182(b)(2)(A)(iv)] is to provide individuals with disabilities access to a representative selection of merchandise available in a department. The Committee **does not** intend that a department store separate each and every display fixture in order to provide wheelchair clearance maneuverability.") *See* H.R. Rep. No. 485 at 110 (emphasis added).

potential "readily achievable" measures to provide access to "those areas . . . where goods and services are made available"); *id.* at § 36.304(f) ("The rearrangement of temporary or moveable structures, such as furniture, equipment, and display racks, is not readily achievable to the extent that it results in a significant loss of selling or serving space.").

And courts across the country have consistently held that 42 U.S.C. § 12182(b)(2)(A)(iv) applies to the arrangement or location of movable or temporary objects that narrow interior aisles. *See Lieber v. Macy's W., Inc.,* 80 F. Supp. 2d 1065, 1077-79 (N.D. Cal. 1999) (holding that movable displays that block or narrow interior aisles are governed by 42 U.S.C. § 12182(b)(2)(A)(iv)); *Colorado Cross-Disability Coalition v. Too (Delaware) Inc.*, 344 F. Supp. 2d 707, 715 (D. Colo. 2004) (holding that 42 U.S.C. § 12182(b)(2)(A)(iv) applies to movable display racks in the defendant's stores); *Thomas v. Kohl's Corp.*, No. 17-cv-5857, 2018 WL 704691, at *3 (N.D. Ill. Feb. 5, 2018) (holding that the spacing of moveable display racks is governed by 42 U.S.C. § 12182(b)(2)(A)(iv)); *see also Rodriguez v. Investco, LLC*, 305 F. Supp. 2d 1278, 1282-83 (M.D. Fla. 2004) (holding that 42 U.S.C. § 12182(b)(2)(A)(iv) applies to all facilities that have already been built, not just facilities built before January 26, 1993).

Plaintiffs likewise cannot meet the requirements of Rule 23(a)(2) by relying on their investigators' findings that merchandise, carts, boxes, and moveable product displays have narrowed the interior paths of travel to a width of less than 32 inches at some of Ollie's stores.  It is well-settled that the Architectural Barriers Act Accessibility Guidelines ("ADAAG") apply only to fixed or built-in structural product displays.  *See Lieber*, 80 F. Supp. 2d at 1078-79 (holding that as a matter of law the ADAAG, including the 36–inch wide path of travel standard, applies only to fixed or built-in displays—not movable displays).  The holding in *Lieber* applies equally to the 2010 ADA Standards for Accessible Design ("2010 Standards").  *See* 28 C.F.R. § 36.104 (explaining that the 2010 Standards are simply the ADAAG plus the requirements set forth at 28 C.F.R. §§ 36.401-

36.407).[12]   Therefore, because the access barriers identified by Plaintiffs involved merchandise, carts, boxes, and moveable product displays (Allen Dep. 29:23-35:20, 41:19-43:21; Mullen Dep. 36:22-38:18), Section 403.5.1 of the 2010 Standards does not apply.  Accordingly, even if Plaintiffs could prove that Ollie's policies and procedures caused the interior paths of travel at its stores to fail to comply with the 2010 Standards' 36–inch wide path of travel standard, that fact does not resolve an issue of liability because the fact that an interior path of travel measured less than 32 inches at an Ollie's store says nothing about whether a class member who shopped at that store actually experienced a violation of Title III.[13]

As such, were this case to proceed as a class action the Court will be required to conduct individualized analyses of each store and each access barrier to determine whether Title III was in fact violated.  For example, taking the 11 access barriers reported in the emails offered by Plaintiffs, three involved individuals who used wheelchairs but did not identify themselves as disabled and, therefore, will require the Court to determine whether the individuals involved have a "disability" within the meaning of Title III, *see* 28 C.F.R. § 36.105 (*see* ECF No. 51-3 at 15, 16, 19); two appear to only experience difficulty access aisles when another customer was in the aisle and, therefore, will require the Court to determine whether they involve "architectural barriers" within the meaning of Title III (*id.* at 4-7, 10, 12); one involved a temporary interruption caused by the reworking of the product displays in the main aisle and, therefore, will require the Court to

---

[12] 28 C.F.R. §§ 36.401-36.407 do not apply here.  *See* 28 C.F.R. § 36.304(d)(1) ("The path of travel requirements of § 36.403 shall not apply to measures taken solely to comply with the barrier removal requirements of this section.").

[13] To be sure, the mere failure to prevent an access barrier from narrowing an aisle to less than 36 inches does not itself deny a mobility disabled access to anything.  (*See* Mullen Dep. at 19:2-12, 72:1-8 (testifying that he could "probably" get through any aisle that is at least 27 inches wide); *see also* Allen Dep. at 107:4-15 (testifying she could "possibly" get through an aisle that is "a little more than" 30 inches wide).)

determine whether the barrier is permitted by 28 C.F.R.§ 36.211(b) (*id.* at 8-9); and two or three involved stores where access barriers were only experienced during a single visit and, therefore, will require the Court to analyze whether the barriers were permissible because they were isolated and temporary.  (*Id.* at 1-4, 19.)  *See Chapman v. Pier 1 Imports,* 779 F.3d 1001 (9th Cir. 2015) (distinguishing between access barriers which violated Title III because they occurred on 11 occasions and access barriers that did not violate Title III because they occurred on 2-3 occasions and were, therefore, isolated and temporary).

Proving the existence and cause of access barriers at each Ollie's store would be too fact-intensive and individualized to be effectively addressed in a single class action.  The threshold questions of whether an access barrier exists and, if so, whether it amounts to a violation of Title III would need to be answered on a store-by-store basis, and the proposed class members at each of Ollie's more than 350 stores would not share common questions the answers to which will resolve issues of liability for all members of the proposed class at once.  *See Mielo*, 2015 WL 1299815, at *6-7 (commonality not met because "the Court would have to conduct a mini-trial for each restaurant in order to determine if injunctive relief was appropriate); *Semenko v. Wendy's Int'l, Inc.,* No. 12-0836, 2013 WL 1568407 at *8 (W.D. Pa. April 12, 2013) (commonality not met because the necessary "highly individualized analysis . . . would require a number of individual mini-trials"); *see also Wagner v. White Castle Sys., Inc.*, 309 F.R.D. 425, 431 (S.D. Ohio 2015) (commonality not met because "differences in applicable law would require the Court to answer a variety of restaurant-specific questions." (citing *Mielo*, 2015 WL 1299815 at *7)); *Castaneda v. Burger King Corp.,* 264 F.R.D. 557, 569 (N.D. Cal. 2009) ("Because every store will have different violations, any ordered injunctive relief will primarily need to be tailored store-by-store. There

can be no 'generally applicable' relief in this case as to patrons of all 92 stores.").  Accordingly, Plaintiffs have failed to meet their burden under Rule 23(a)(2).[14]

> **3.  Plaintiffs have failed to prove that the access barriers they experienced and the access barriers at Ollie's other stores were caused by the same Ollie's policy or procedure.**

The typicality requirement of Rule 23(a)(3) evaluates the sufficiency of the named plaintiff, whose interests must be aligned with those of the absent class members so as to assure that the absentees' interests be fairly represented.  *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  Rule 23(a)(3) "requires the claims and defenses of the representative to be sufficiently similar not just in terms of their legal form, but also in terms of their factual basis and support." *Mielo*, 2015 WL 1299815, at *7 (citing *E. Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395 (1977)).  To establish typicality a named plaintiff must show that her "claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members." *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3d Cir. 1992) (internal quotations omitted).  "Where an action challenges a policy or practice, the named plaintiffs

---

[14] The cases cited by Plaintiffs are easily distinguished. (Pls.' Br. at 20-21.)  *Hernandez v. AutoZone, Inc.*, 323 F.R.D. 496 (E.D.N.Y. 2018) involved slopes in parking lots and the court granted class certification based on the defendant's alleged lack of an ADA compliance policy, a basis that the Third Circuit has found to be insufficient.  *See Mielo,* 897 F.3d at 478 (denying class certification); *see also Mielo,* 2019 WL 1330836, at *12–13 (holding that Title III does not require public accommodations to adopt policies to ensure ADA compliance and granting summary judgment for defendant).  *Lucas v. Kmart Corp.*, 2005 WL 1648182 (D. Colo. July 13, 2005) granted class certification based on legal principles that have been rejected by the Supreme Court and the Third Circuit.  *Compare id.* at *2 (ruling that it was to favor certification and could not examine the merits) *with Mielo*, 897 F.3d at 482-83 (citing *Dukes,* 564 U.S. at 350–51) (holding that if, after a rigorous analysis that "overlap[s] the underlying merits of the suit," the court "harbor[s] doubt as to whether a plaintiff has carried her burden under Rule 23, the class should not be certified.").  *Park v. Ralph's Grocery Co.*, 254 F.R.D. 112, 120 (C.D. Cal. 2008) also applied a pre-*Dukes* standard, and involved bathroom accessibility and slopes in parking lots.  *Id.* at 120-121.  *Gray v. Golden Gate Nat. Recreational Areas*, 279 F.R.D. 501 (N.D. Cal. 2011) was a Title II case in which the defendant's self-assessments (which are required by Title II) demonstrated system-wide ADA violations. *Id.* at 519.

suffering one specific injury from the practice can represent a class suffering other injuries, *so long as all the injuries are shown to result from the practice.*"  *Baby Neal*, 43 F.3d at 58 (emphasis added).

Thus, to show that their claims are typical of the claims of the proposed class Plaintiffs must prove the same Ollie's policy or procedure caused the access barriers they experienced and also caused the access barriers experienced by the proposed class members.  As discussed in section III.A.2 above, Plaintiffs have failed to prove that an Ollie's policy or procedure caused the access barriers they experienced at the New Castle or Monaca stores.  Even if Plaintiffs could prove that an Ollie's policy or procedure caused the barriers they experienced (which they cannot), they must still prove that the same Ollie's policy or procedure caused the access barriers that their investigators observed at Ollie's other stores; which they cannot do.  The only witnesses to the access barriers in Ollie's other stores were Plaintiffs' investigators, and both of them testified that they do not know the cause of any of the access barriers they observed.  (Reardon Dep. at 48:9-50:3, 93:3-7; Taylor Dep. at 39:19-40:5.)  Plaintiffs can offer only speculation about what caused the access barriers in each of Ollie's stores.  As such, they have failed to meet their burden under Rule 23(a)(3).

      **C.**    **Plaintiffs' Motion Should Be Denied Because They Have Failed To Prove That They Have Met The Requirements Of Rule 23(b)(2).**

Even if Plaintiffs could somehow satisfy Rule 23(a), class certification would still be improper because they cannot satisfy Rule 23(b)(2).  Rule 23(b)(2) provides for certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "The key to the [Rule 23](b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or to none of them."  *Dukes*, 564 U.S. at 360 (citation and internal quotation marks omitted).

Rule 23(b)(2) presents three components that must be satisfied before a class can be certified. First, Rule 23(b)(2) is satisfied "only when a single injunction or declaratory judgment would provide relief to *each member of the class*. It does not authorize class certification when each individual class member would be entitled to a *different* injunction[.]" *Dukes*, 564 U.S. at 360 (emphasis added); *see also Mielo*, 897 F.3d at 491. Second, the injunction cannot be one that amounts to nothing more than an order to "obey the law", such as to comply with Title III of the ADA. *Belitskus v. Pizzingrilli,* 343 F.3d 632, 650 (3d Cir. 2003); *see also Mielo*, 2015 WL 1299815, at *12; Fed. R. Civ. P. 65(d)(1)(B), (C). Third, "the class claims must be cohesive." *Gates v. Rohm and Haas Co.*, 655 F.3d 255, 263-64 (3d Cir. 2011) ("Indeed, a (b)(2) class may require more cohesiveness than a (b)(3) class.").

Plaintiffs fail to explain what policy change could be made. They make no attempt to explain how Ollie's could modify its Visual Store Standards, its maintenance and safety forms, or its training program to prevent access barriers from occurring in the interior paths of travel at its stores. Instead, Plaintiffs contend that they "are not required to request specific injunctive relief at this stage of the litigation," and stand on the conclusory assertion that Ollie's "could easily incorporate policy changes to remedy the harms presently caused by its current policies and practices." (Pls.' Br. at 26.) Plaintiffs will not be able to identify such an injunction at any stage because it is not possible to craft a single permissible injunction that would prevent all access barriers from occurring in the interior paths of travel at all of Ollie's more than 350 stores. The only way to resolve the claims of all proposed class members in a single injunction would be a broad "comply with Title III" injunction. However, such an injunction is impermissible under Rule 23(b)(2). *See Belitskus,* 343 F.3d at 650; *Mielo*, 2015 WL 1299815, at *12. Further, Plaintiffs have also failed to meet Rule 23(b)(2)'s heightened standard for cohesiveness. *See Gates*, 655 F.3d at 264; *Mielo*, 2015 WL 1299815, at *12–13. For all of the foregoing reasons, the Court will be required to

21

conduct individualized store-by-store analyses to determine whether injunctive relief is appropriate. Accordingly, Plaintiffs have failed to satisfy their burden under Rule 23(b)(2).[15]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs have failed to establish standing and failed to meet the requirements of Rule 23 of the Civil Rules of Civil Procedure.  Accordingly, this Court should deny Plaintiffs' motion for class certification.

Dated: June 18, 2020                                         Respectfully submitted,

**FOX ROTHSCHILD LLP**

_/s/ Richard L. Etter_
Richard L. Etter (PA 92835)
500 Grant Street, Suite 2500
Pittsburgh, PA 15219
Telephone: (412) 394-5529
retter@foxrothschild.com

_Counsel for Defendant Ollie's Bargain Outlet, Inc._

---

[15] The cases Plaintiffs cite do not support their arguments. (Pls.' Br. at 26.)  _Heinzl v. Cracker Barrel Old Country Stores, Inc._, 2016 WL 2347367, at *18 (W.D. Pa. Jan. 27, 2016) was a parking lot slope case that predated the Third Circuit's decision in Mielo and "and its skepticism that the lack of a corporate maintenance policy would provide plaintiffs with standing in such a circumstance."  _Mielo_, 2019 WL 1330836, at *12–13.  _Mielo_ involved slopes in parking lots and the holding cited by Plaintiffs related to the issue of standing, not class certification.  _See Mielo_, 897 F.3d at 482.  As discussed above, _Hernandez_, 323 F.R.D. 496 involved slopes in parking lots and granted class certification based on facts that the Third Circuit has found to be insufficient.  _See Mielo_, 897 F.3d at 478; _see also Mielo_, 2019 WL 1330836, at *12–13.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served by

electronic means through the Court's transmission facilities on all counsel of record.

FOX ROTHSCHILD LLP

Date:  June 18, 2020          */s/  Richard L. Etter*
                              Richard L. Etter