IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IRMA ALLEN and BARTLEY MICHAEL MULLEN, JR., individually and on behalf of all others similarly situated,<br>　　　　　　　　　　Plaintiffs,<br>　v.<br>OLLIE'S BARGAIN OUTLET, INC.,<br>　　　　　　　　　　Defendant. | Case No.: 2:19-cv-00281-NBF<br><br>ELECTRONICALLY FILED |

**DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**I.   Plaintiffs lack standing because they have failed to adequately allege injuries that can be redressed with injunctive relief.**

At oral argument, when asked about Defendant's standing arguments, Plaintiffs' counsel responded: "I think that's a red herring, Your Honor. I think we clearly have standing. And if you look at - - and particularly with respect to the fixed object. If you look at the *Mielo* decision, the court gets into all the issues that arise under standing." Transcript of Oral Argument (Tr.) at 7:5-17. Plaintiffs, however, have not alleged that they were denied access to Ollie's stores because of fixed or built-in objects. Rather, Plaintiffs allege that they were denied access "as a result of accessibility barriers existing in interior paths of travel," specifically "merchandise displays, clothing racks, boxes, and/or other items positioned so that they block or narrow the aisle pathways." ECF 15, ¶ 8.

To establish standing, Plaintiffs must show that their injury "is likely to be redressed by a favorable judicial decision." *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467, 481 (3d Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 1547 (2016)). "This requires the plaintiff to show that it is likely, as opposed to merely speculative, that the alleged injury will be redressed by a favorable decision." *Id.* (internal quotations and citations omitted).

As to the redressability of their alleged injuries, Plaintiffs allege that "unless Defendant is required to remove the access barriers described herein, **and** required to change its policies and practices so that these access barriers do not reoccur at Defendant's stores, Plaintiffs and the proposed Class will continue to be denied full and equal access to the stores and will be deterred from fully using Defendant's stores." *Id.* at ¶ 11 (emphasis added). Thus, according to Plaintiffs own allegations, their injuries can only be addressed by an injunction requiring Ollie's to implement policies or procedures that will prevent such moveable items from ever blocking or narrowing the aisle pathways in Ollie's New Castle and Monaca stores. *Id.* at ¶¶ 8, 11, 12.

The ADA does not enable Plaintiffs to obtain such relief. In *Mielo v. Steak 'N Shake Operations, Inc.*, the Third Circuit reasoned that a permanent injunction requiring public accommodations to implement such a proactive policy was at odds with "the very policy which Congress codified in the text of the ADA." 897 F.3d 467, 478 n.10 (3rd Cir. 2018). On remand, Magistrate Judge Mitchell followed the Third Circuit's reasoning and held that the ADA does not require public accommodations to adopt an affirmative policy to seek out and prevent the occurrence or reoccurrence of access barriers. *Mielo v. Steak 'N Shake Operations, Inc.*, No. 15-00180, 2019 WL 1330836, at *8, 13 (W.D. Pa. Mar. 25, 2019); *see also Murphy v. Aaron's, Inc.,* No. 19-00601, 2019 WL 5394050, at *5 (D. Colo. Oct. 22, 2019), report and recommendation adopted, 2020 WL 2079188 (D. Colo. Apr. 30, 2020) (holding that the ADA does not enable plaintiff to obtain injunctive relief requiring defendant adopt policies and practices to ensure that access barriers "do not reoccur.").

**II.     Plaintiffs have failed to prove numerosity because they have presented no evidence from which the Court could determine the number of putative class members who have experienced or will experience an ADA violation at one of Ollie's stores.**

At oral argument, the Court asked Plaintiffs' counsel whether the Court could presume that anybody who uses a wheelchair and shops at an Ollie's store has actually experienced an access

barrier that violates the ADA. Tr. at 11:14-20. Plaintiffs' counsel responded: "I think you're assuming it and I don't think the ADA requires more than that." *Id.* at 11:21-22. When the Court asked Plaintiffs' counsel whether he could cite to a case that supports the position that the Court may presume that all wheelchair users who shopped at Ollie's stores "have, or will have, experienced access barriers in interior paths of travel," Plaintiffs' counsel responded: "I have something better than that, Your Honor. I have legislative language. I have statutory provision as part of the ADA"; however, when asked for a citation, Plaintiffs' counsel could not provide one. Tr. 14:9-15:11.[1]

The Third Circuit has held that a plaintiff cannot ask the Court to presume numerosity based on the number of disabled persons included in a larger group; rather, the plaintiff must present evidence that would permit the Court "to determine—rather than speculate about" the number of disabled individuals "who have experienced or will experience **an ADA violation**" at one of the defendant's establishments. *Mielo*, 897 F.3d at 486 (emphasis added). The Third Circuit reiterated the point, stating:

> If Plaintiffs wish to attempt to satisfy their Rule 23(a)(1) burden upon remand, they will need to provide evidence that will permit the District Court to conclude that a sufficiently numerous group of disabled individuals **have experienced or will experience ADA violations** at a relevant Steak 'n Shake restaurant, and that joinder is thereby impracticable.

*Id.* at 487 (emphasis added). Thus, *Mielo* makes clear that Plaintiffs cannot meet their Rule 23(a)(1) burden simply by presenting evidence of the number of wheelchair users who have used Ollie's stores and asking the Court to presume that each of them has experienced an access barrier.

Here, Plaintiffs have failed to present evidence that could enable the Court to conclude that the number of mobility disabled individuals who have experienced or will experience access barriers

---

[1] To the extent Plaintiffs' counsel was referring to 42 U.S.C. § 12188(a)(1), Plaintiffs cannot rely on that section to establish numerosity because they have presented no evidence from which the Court could determine the number of mobility disabled individuals who had "actual notice" of Ollie's alleged intention not to comply with the ADA.

at Ollie's stores is so large that joinder is thereby impracticable.  Plaintiffs offer three categories of evidence in an attempt to meet their numerosity burden: census data, surveillance camera photos, or complaint emails.  First, the census data, which Plaintiffs state is from the U.S. Census Bureau's American Community Survey and the 2015 Disability Status Report, does not identify the number of individuals with qualified mobility disabilities.  Rather, the census data cited by Plaintiffs actually represents the number of persons age 5 and older who have an "ambulatory difficulty," i.e., those for whom the answer was "yes" when asked, "Does this person have a serious difficulty walking or climbing stairs?"  *See* 2015 Disability Status Report at 2-3, available at www.disabilitystatistics.org.  Because an individual can have a serious difficulty walking or climbing stairs without having a "mobility disability," the census data fails to identify individuals who meet the first element of Plaintiff's class definition.  In any event, the census data fails to provide any information as to the number of those individuals who have shopped at, or plan to shop at, an Ollie's store, much less how many of them have experienced, or will experience, an access barrier in an interior path of travel.

Second, Plaintiffs argument that the photographs from the video cameras in Ollie's New Castle and Monaca stores show at least 16 mobility disabled individuals shopping at Ollie's stores is based on the faulty premise that everyone who uses a wheelchair has a mobility disability.  This, of course, is not true—obesity and a broken leg being just two common examples of reasons why non-disabled individuals use wheelchairs.  Thus, the Court can only speculate as to how many of the 16 wheelchair users are mobility.  Even assuming that all 16 wheelchair users were in fact mobility disabled, the video surveillance footage fails to provide any information as to the number of those

wheelchair users who have experienced, or will experience, an access barrier in an interior path of travel.[2]

Third, as to the 11-12 complaint emails, Ollie's objected to these emails as inadmissible hearsay in its opposition brief, a point which Plaintiffs conceded by failing to respond to in their reply brief or at oral argument. Even if they were admissible, a review of the complaint emails shows that they at most identify 4-5 individuals who claim to meet Plaintiffs' proposed class definition. For example, three emails fail to identify an individual who claims to have a mobility disability, another two emails fail to claim that the individual experienced an access barrier in an interior path of travel, and two emails identify access barriers that occurred outside the applicable two-year statute of limitations.[3] *See* ECF No. 51-3 at 4-7, 10, 15-17, 19.

To be sure, the fact that Ollie's has received only 11-12 accessibility-related complaints since October 21, 2015—more than 5 ½ years ago—does not suggest that the proposed class is so numerous that joinder is impracticable. Quite the opposite, the dearth of accessibility-related complaints suggests that there are very few wheelchair users—not to mention mobility disabled individuals—who have experienced an access barrier in an internal path of travel at an Ollie's store. This conclusion is further supported by the video surveillance photos submitted by Plaintiffs, photos which failed to show a single instance of a wheelchair user experiencing an access barrier. The conclusion that few wheelchair users have experienced access barriers in Ollie's stores is also supported by the fact that despite conducting dozens of investigations in dozens of Ollie's stores

---

[2] The fact that these 16 wheelchair users visited the two Ollie's stores visited by Plaintiffs does, however, bely any argument that wheelchair users are as a group deterred from shopping at Ollie's.

[3] Because the ADA was enacted prior to the effective date of the default four-year statute of limitations for federal statutes, Pennsylvania's two-year statute of limitations for personal injury claims applies. *See Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008).

Plaintiffs' investigators never witnessed a single wheelchair user experience an access barrier. (Riordan Dep. at 59:17-21; Taylor Dep. at 49:4-13).

Finally, Plaintiffs cannot establish numerosity by pointing to their investigators' reports that every Ollie's store surveyed had a pathway that was less than 36 inches wide. As Plaintiffs' counsel stated at oral argument, the ADA scoping standards requiring a 36 inch wide path of travel for wheelchairs applies only to fixed or built-in objects. Tr. at 5:14-24. The access barriers at issue in this case were caused by movable objects. *See* ECF 15, ¶ 8 (identifying the access barriers that Plaintiffs experienced as "merchandise displays, clothing racks, boxes, and/or other items positioned so that they block or narrow the aisle pathways"). As such, Plaintiffs cannot meet their Rule 23(a)(1) burden by asking the Court to presume that because an Ollie's store had paths of travel less than 36 inches wide, all mobility disabled individuals who shopped at that Ollie's store have experienced or will experience an ADA violation. *See Equal Rights Center v. Kohl's Corp.*, No. 14-08259, 2017 WL 1652589, at *4 (N.D. Ill. May 2, 2017) (concluding that plaintiffs failed to meet Rule 23(a)(1) and holding that "[s]imply because a store may have one or more aisles that are less than 36 inches does not necessarily lead to the conclusion that it was inaccessible to a person using a wheeled mobility device"); *see also Mielo,* 897 F.3d at 486-87 (holding that to meet Rule 23(a)(1) Plaintiffs must present evidence that the putative class members experienced an ADA violation at one of Defendant's locations).

The present case is similar to *Equal Rights Center v. Kohl's Corp.*, No. 14-08259, 2017 WL 1652589 (N.D. Ill. May 2, 2017). In *Equal Rights Center*, the plaintiffs attempted to establish numerosity based on census data showing the number of individuals with a mobility disability and the number of wheelchair users in the relevant areas, their expert's report which concluded that every Kohl's store he visited had multiple aisles that were narrower than 36 inches, and the fact that 12 mobility disabled individuals experienced access barriers in 17 different stores. *Id.* at *3-4. The

court concluded that such evidence was insufficient to establish numerosity. *Id.* Specifically, the court concluded that the expert report could not establish numerosity because the fact that every Kohl's store visited had aisles narrower than 36 inches "does not necessarily support a conclusion that individuals with wheeled mobility devices either visited those stores or were unable to access merchandise or facilities based on the width of an aisle." *Id.* The court similarly concluded that the statistical data was insufficient because it failed to show how many disabled wheelchair users actually experienced an ADA violation at a Kohl's store. Finally, the concluded that the fact that 12 mobility disabled individuals experienced access barriers in 17 different stores was insufficient to show that joinder was impracticable. *Id.* at *3-4.

Because the evidence that Plaintiffs have provided does not permit the Court to determine the number of mobility disabled individuals who have shopped at an Ollie's store and experienced access barriers in the interior paths of travel, the Court can only speculate about the size of the proposed class. As such, Plaintiffs have failed to meet their burden under Rule 23(a)(1). *See Mielo*, 897 F.3d at 484-87; *Equal Rights Center*, 2017 WL 1652589, at *3-4.

### III. Plaintiffs cannot establish commonality by arguing that Ollie's policies and procedures fail to prevent access barriers caused by moveable objects.

Plaintiffs cannot meet the requirements of Rule 23(a)(2) by alleging, or even establishing, that Ollie's policies and procedures are inadequate to prevent moveable objects from causing obstructions in the interior paths of travel. *See Mielo v. Bob Evans Farms, Inc.*, 2015 WL 1299815 (W.D. Pa. March 23, 2015); *see also Equal Rights Center*, 2017 WL 1652589 at *4-5. In *Bob Evans*, Judge Eddy rejected a similar contention that commonality could be established by pointing to a purportedly inadequate, central policy that permitted access barriers to exist. *Id.*. at *2-4 Specifically, Judge Eddy concluded:

> Before any common legal issues can be reached, each restaurant's parking lot must be individually examined, its date of construction or alteration determined, and then a determination must be made as to whether the parking lot meets the ADA standards

>applicable to the structure depending on its date of construction . . . Proving the existence and cause of accessibility barriers at each of Bob Evans restaurants would be too fact-intensive and individualized to be effectively addressed in a single class action. The threshold question – whether any store in particular is out of compliance and if so, in what manner (running slope, cross slope, degree of deviation) – would have to be answered on a store-by-store basis, and the class members at the various 563 nationwide stores would not share common legal issue or core salient facts. Rather the Court would have to conduct a mini-trial for each [location] in order to determine if injunctive relief was appropriate.

*Id.* at *3.

Here, the common question this case raises is whether Ollie's policies and procedures caused the members of the class to experience unlawful access barriers in the interior paths of travel of Ollie's stores. As in *Bob Evans*, there is no common answer to this question. Instead, the answer requires a store-by-store, obstruction-by-obstruction analysis. At oral argument, Plaintiffs' counsel stated that not all of the alleged access barriers involve movable obstructions. Tr. at 5:8-24. As such, to determine which standard applies, each obstruction will need to be analyzed to determine whether it was caused by a fixed or a moveable obstruction. *See id.* In addition, there will need to be highly individualized fact inquires at each of the stores to determine whether the alleged obstructions at issue were isolated or temporary and thus are permitted by 28 C.F.R. § 36.211(b). Further, because the ADA requires only one accessible route in a store, an individual assessment will be needed to determine whether an alternative accessible route existed. As such, Plaintiffs have failed to meet their burden under Rule 23(a)(2).

For each of the foregoing reasons, as well as the reasons set forth in Ollie's earlier briefs, Plaintiffs have failed to establish standing and failed to meet the requirements of Rule 23 of the Civil Rules of Civil Procedure. Accordingly, this Court should deny Plaintiffs' motion for class certification.

Dated: March 2, 2021

Respectfully submitted,

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*/s/ Richard L. Etter*
Richard L. Etter (PA 92835)
One PPG Place, Suite 1900
Pittsburgh, PA 15222-1237
Telephone: (412) 230-8963
Facsimile: (412) 232-1799
rick.etter@ogletree.com

Attorney for Defendant Ollie's Bargain Outlet, Inc.