IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IRMA ALLEN and BARTLEY MICHAEL MULLEN, JR. *individually and on behalf of all others similarly situated*,<br><br>*Plaintiffs*,<br><br>v.<br><br>OLLIE'S BARGAIN OUTLET, INC.,<br><br>*Defendant*. | Civil Action No. 2:19-cv-281<br><br>Hon. William S. Stickman IV |

## **OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiffs, Irma Allen ("Allen") and Bartley Michael Mullen, Jr. ("Mullen"), filed a putative class action under Federal Rules of Civil Procedure 23(a) and 23(b), on behalf of themselves and all others similarly situated, requesting injunctive and declaratory relief on the ground that Defendant, Ollie's Bargain Outlet, Inc. ("Ollie's"), does not provide people utilizing wheelchairs or scooters with full and equal enjoyment of its facilities in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189. (ECF No. 15, pp. 28–30). Plaintiffs maintain that Ollie's used policies and procedures that facilitated or caused fixed and movable access barriers to unlawfully restrict the interior pathways of its stores, thereby preventing people with disabilities from obtaining Ollie's goods. (ECF No. 15, pp. 6–9).

Plaintiffs request that the Court certify their proposed class under Federal Rule of Civil Procedure 23 (ECF No. 47), and in doing so, take judicial notice of several pieces of evidence (ECF No. 65). For the reasons set forth below, Plaintiffs' Request for Judicial Notice (ECF No.

1

65) will be granted in part and denied in part, and Plaintiffs' Motion for Class Certification (ECF No. 47) will be granted.

**I.  BACKGROUND**

Allen and Mullen each have mobility disabilities and require the use of wheelchairs for travel. (ECF No. 57-2, p. 5); (ECF No. 57-3, p. 4). Ollie's operates more than 350 stores throughout the United States. (ECF No. 51-11, pp. 3–16). Allen is a customer of Ollie's store in New Castle, Pennsylvania (ECF No. 57-2, pp. 9–10), and Mullen is a customer of Ollie's stores in New Castle, Pennsylvania and Monaca, Pennsylvania (ECF No. 57-3, pp. 7–8). Allen and Mullen were prevented from accessing some of Ollie's goods because of movable barriers, including, among other things, merchandise displays, clothing racks, display cases, and boxes, as well as some fixed barriers, such as pillars or columns. (ECF No. 51-1, pp. 3–4, 11–12, 15–16); (ECF No. 51-2, pp. 2–3). Allen and Mullen produced written complaints detailing the complications several other wheelchair-bound or individuals with disabilties endured while shopping at Ollie's stores. (ECF No. 51-3). Subsequent investigations of Ollie's stores also revealed and confirmed some of the barriers complained of, such as merchandise displays, clothing displays, and boxes restricting or narrowing the pathways of Ollie's stores. (ECF No. 51-5); (ECF No. 51-6); (ECF No. 51-7).

Plaintiffs allege that Ollie's employs uniform policies and procedures that actively or intentionally facilitate the placement of barriers in interior paths of travel to facilitate revenue and profits. (ECF No. 15, ¶¶ 1–3). Ollie's corporate designee confirmed that Ollie's uses company-wide policies and procedures consisting of Visual Store Standards, Daily Facilities Maintenance Scans, Daily Store Safety Scans, Monthly Maintenance Scans, and a "Yes, I Can" program. (ECF No. 57-1, pp. 12–13, 38–39). Ollie's policies do not expressly mention the ADA. (ECF No. 57, p. 9). Ollie's does not train or educate its employees on ADA compliance. (ECF No. 57-1, pp. 5–

6). These policies collectively govern the operation and appearance of Ollie's stores. Ollie's provides each store with training and instructions for implementing its policies and procedures, and each store has an individual charged with ensuring compliance with those policies. (ECF No. 57-1, pp. 7–8, 22–23). The Visual Store Standards policy provides instructions for setting up and displaying merchandise. (ECF No. 51-9); (ECF No. 51-10). The "Yes, I Can" policy applies to all employees and requires them to retrieve products for customers that are unable to access the goods on their own. (ECF No. 51-8, pp. 48–49). The daily and monthly scans of Ollie's stores are designed to ensure, among other things, that the overall appearance and safety of the stores are compliant with Ollie's policies and practices. (ECF No. 51-12); (ECF No. 51-13); (ECF No. 51-14).

Plaintiffs contend that, because Ollie's policies and procedures intentionally positioned merchandise displays, clothing racks, boxes, and other movable barriers in a manner that restricted individuals with mobility issues from accessing Ollie's goods and services (ECF No. 15, ¶¶ 1–3), Ollie's violated several ADA provisions found in 42 U.S.C. §§ 12182(a) and 12183(a) (ECF No. 15, ¶¶ 20–29, 61–65). Plaintiffs request permanent injunctive relief in the form of removal of the barriers at issue, modification of Ollie's policies and procedures, and the continued monitoring of Ollie's stores. (ECF No. 15, p. 31). As Plaintiffs see it, they are not the only ones who have encountered allegedly unlawful barriers at Ollie's stores, and they now request that the Court certify their action as a class action under Federal Rule of Civil Procedure 23. (ECF No. 47). In addition, Plaintiffs request that the Court take judicial notice of several pieces of evidence. (ECF No. 65). Oral argument was held on Plaintiffs' Motion for Class Certification (ECF No. 47). This matter is ripe for adjudication.

## II. ANALYSIS

### A. Judicial Notice

Before examining whether class certification is warranted, the Court must decide whether to take judicial notice of facts that Plaintiffs use in support of their motion. Allen and Mullen request that the Court take judicial notice of three things: (1) the Settlement Agreement between the United States of America and DolgenCorp, LLC ("Dollar General Settlement Agreement") (ECF No. 65-1); (2) disability statistics located at https://www.disabilitystatistics.org/. (ECF No. 51-15); and (3) zip code tabulation statistics compiled by the United States Census Bureau located at https://www.census.gove/programs-surveys/geography/guidance/geo-areas/zctas.html. (ECF No. 51-16). Ollie's agrees that the Dollar General Settlement Agreement and the zip code statistics should be judicially noticed. (ECF No. 70, pp. 1–2). The parties disagree as to whether judicial notice of the disability statistics is appropriate, and upon meeting and conferring on the issue, they filed a Joint Status Report (ECF No. 72) indicating their continued disagreement. Because the parties agreed that the Court may judicially notice the Dollar General Settlement Agreement and the zip code tabulation statistics compiled by the United States Census Bureau, the Court need only address whether the disability statistics may be judicially noticed.

Plaintiffs attached to their Memorandum in Support of their Motion for Class Certification (ECF No. 51) a printout of statistical information entitled "State-Level Estimates of Individuals with Mobility Disabilities" that was purportedly "[r]etrieved from [the] Cornell University Disability Statistics website [at] https://www.disabilitystatistics.org/." (ECF No. 51-15, p. 1 n.1).[1] Ollie's contends that the statistics cannot be judicially noticed because the source of the statistics

---

[1] Plaintiffs utilize these statistics as additional support to establish that "there are between 14.9 million [and] 20.9 million persons with mobility disabilities who live in the United States." (ECF No. 51, p. 16 & 16 n.14).

4

has not been provided, and the Court does not have the necessary information to take judicial notice. (ECF No. 70, p. 2).

A court may take judicial notice of information that is not subject to reasonable dispute because it is either "generally known within the trial court's territorial jurisdiction" or it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). A court may take judicial notice on its own, or it must do so if a party requests notice and supplies necessary information. Fed. R. Evid. 201(c)(1)–(2). Where evidence is derived from a website, our Court of Appeals has cautioned that "[w]hile it is proper for a court to take judicial notice of facts not reasonably subject to dispute, . . . several concerns come into play . . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007) (citation omitted). At the outset, that evidence must "be authenticated before it can be admitted[,]" and judicial notice is only permitted "from sources not reasonably subject to dispute." *Id.* (citation omitted).

The printout contains information that is not generally known within the community, and the accuracy of the printout is questionable because it is unauthenticated. Further, it is not readily apparent who prepared the printout. Thus, the Court will not take judicial notice of the disability statistics printout (ECF No. 51-15) because it is unauthenticated and the Court cannot definitively hold that the statistics are not subject to reasonable dispute.

**B.     Article III Standing**

Moving onto Plaintiffs' Motion for Class Certification, Ollie's argues as a threshold matter that the Court should deny certification because Plaintiffs have failed to establish that they and others suffered an injury in fact that is fairly traceable to the conduct of Ollie's, and that their injuries are likely to be redressed by a favorable judicial decision. (ECF No. 57, p. 1). Plaintiffs

counter that they have satisfied the requirements of constitutional standing. (ECF No. 64 pp. 4–6).

Article III standing is conferred when a plaintiff has (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018). The plaintiff bears the burden of showing the above three elements. *Id.* (citation omitted). The Article III standing inquiry "[i]n the class action context, . . . focuses solely on the class representative(s)." *Id.* In other words, "putative class members need not establish Article III standing. Instead, the 'cases or controversies' requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class." *Id.* (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015)) (internal quotation marks omitted).

First, Plaintiffs must show that they suffered an injury in fact. "The primary element of standing is injury in fact, and it is actually a conglomerate of three components." *Id.* (citation omitted). An injury in fact is shown when a plaintiff establishes that he or she suffered an invasion of a legally protected interest. *Id.* (citation omitted). When evaluating whether a plaintiff has suffered an invasion of a legally protected interest, a court must separate its standing inquiry from any evaluation of the merits of the claim. *Id.* at 478–79 (citation omitted). "Unlike a Rule 23 inquiry, where courts are often required to make factual and legal determinations pertaining to a plaintiff's underlying cause of action, [the] standing inquiry must avoid any consideration of the merits beyond a screening for mere frivolity." *Id.* at 479 (citation omitted). Additionally, the injury must be concrete and particularized, and actual or imminent—not merely conjectural or hypothetical. *Id.* (citation omitted). Second, Plaintiffs must show that their alleged injuries in fact

are "fairly traceable to the challenged conduct of the defendant." *Id.* at 480–81 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)) (internal quotation marks omitted).

> This requirement is akin to "but for" causation in tort and may be satisfied even where the conduct in question might not have been a proximate cause of the harm. An indirect causal relationship will suffice, provided that there is a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant.

*Id.* at 481 (quoting *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193–94 (3d Cir. 2016)). Third, as to redressability, Plaintiffs must show that their injuries are "likely to be redressed by a favorable judicial decision." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1547).

Plaintiffs have sufficiently shown that they suffered an injury in fact because they allege that Ollie's policies and procedures directly and physically precluded them from accessing goods and services.² (ECF No. 15, ¶¶ 39–41); (ECF No. 51-1, pp. 3–4, 11–12, 15–16); (ECF No. 51-2, pp. 2–3). Plaintiffs' injuries are fairly traceable to the policies and procedures because they allege that they would not have encountered physical access barriers but for Ollie's discriminatory practices.³ *See Mielo*, 897 F.3d at 481 (holding allegations that injuries were fairly traceable to

---

² Ollie's argues that Plaintiffs cannot show that they have a legally protected interest at stake because Title III does not require public accommodations to implement policies and procedures to actively seek out potential ADA violations. (ECF No. 57, p. 13). In support thereof, Ollie's cites the decision in *Mielo v. Steak 'N Shake Operations, Inc.*, No. 15-180, 2019 WL 1330836 (W.D. Pa. Mar. 25, 2019), in which the district court held that the defendant did not have to adopt policies and procedures of identifying or seeking out potential ADA violations. *Id.* at *10. While that may be the case, the Court respectfully is not bound by the decisions of other district courts, and this case differs because Plaintiffs are alleging that Ollie's policies and procedures are directly causing access barriers in pathways, not merely failing to prevent them.

³ Ollie's argues that Plaintiffs have not shown that its policies or procedures caused the alleged injuries (ECF No. 57, p. 14), and that Plaintiffs must be held to a more exacting standard because this case is beyond the pleadings stage (ECF No. 69, p. 5). This case is procedurally similar to *Mielo* because discovery ended on January 31, 2020, and discovery in *Mielo* ended before the plaintiffs moved for certification and before an appeal was taken. *Mielo v. Steak 'n Shake Operations, Inc.*, No. 15-180, 2017 WL 1519544, at *1 (W.D. Pa. Apr. 27, 2017). Moreover, to the extent Ollie's argues that Plaintiffs are required to offer direct proof linking their injuries to

7

unlawful policies sufficient at pleadings stage). Plaintiffs' injuries are also likely to be redressed by a favorable judicial decision because they request a permanent injunction requiring Ollie's to, among other things, remove the access barriers and modify their discriminatory policies. *See id.* at 482 (holding injuries were likely to be redressed by a favorable judicial decision through revision of the policies at issue).

### C.  Rule 23 Analysis

Plaintiffs argue that certification is warranted because they have satisfied the requirements of Rule 23. Plaintiffs' proposed class is defined as:

> All persons with qualified mobility disabilities who have attempted, or will attempt, to access the interior of any store owned or operated by Defendant within the United States and have, or will have, experienced access barriers in interior paths of travel.[4]

---

the conduct of Ollie's, their burden at this stage is not so cumbersome. *See Mielo*, 497 F.3d at 481 ("While Plaintiffs will face a heavier burden to establish causation should they eventually be put to their proof, their burden of establishing causation at the pleadings stage is less stringent."). After remand, the plaintiffs in *Mielo* were eventually "put to their proof" at summary judgment where Steak 'n Shake successfully argued that the plaintiffs lacked constitutional standing because the plaintiffs could not connect their injuries to the failure to adopt an appropriate ADA policy as their injuries could have been the result of several reasons, such as "improper construction, faulty modification, weather, an inadequate policy, rogue disobedience of the policy, poor execution of the policy or some other cause." *Mielo v. Steak 'n Shake Operations, Inc.*, No. 15-180, 2019 WL 1330836, at *13 (W.D. Pa. Mar. 25, 2019). Accordingly, because the Court's standing inquiry is closely associated with the particular procedural stage of the litigation, Plaintiffs need only allege causation "beyond . . . mere frivolity[,]" which the Court holds that they have done here.

[4] After oral argument was held, in Plaintiffs' Supplemental Brief in Support of Their Motion for Class Certification (ECF No. 91), they provided that, while the current definition of the class complies with Rule 23, they would agree to modifying the class definition as follows:

> All persons with qualified mobility disabilities, who have attempted, or will attempt, to access the interior of any store owned or operated by Defendant within the United States. The claims of Plaintiffs and the Class are limited to access barriers in the interior paths of travel in Defendant's stores.

(ECF No. 91, p. 6). Plaintiffs argue that a revised class definition is appropriate because they "must only show that [Ollie's] policies and practices subjected putative class members to an increased risk of encountering interior access barriers, not that they in fact encountered them." (ECF No. 91, p. 6). Ollie's has not had the opportunity to respond to the proposed broadening of the class because Plaintiffs made the proposed revision in their supplemental briefing after oral

8

(ECF No. 15, ¶ 55). Ollie's on the other hand counters that Plaintiffs satisfy none of Rule 23's requirements.

A class may be certified where the moving party satisfies the four requirements of Federal Rule of Civil Procedure 23(a), and depending on the avenue, the requirements of either Federal Rule of Civil Procedure 23(b)(1), (b)(2), or (b)(3). *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 182 (3d Cir. 2019) (citation omitted). To satisfy the requirements of Rule 23(a), the moving party must show the following:

> (1) the class must be so numerous that joinder of all members is impracticable (numerosity); (2) there must be questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality); and (4) the named plaintiffs must fairly and adequately protect the interests of the class (adequacy of representation, or simply adequacy).

*Id.* at 182–83 (citation omitted). If the moving party satisfies these requirements, they must then satisfy either of the provisions of Rule 23(b)(1), (b)(2), or (b)(3). A court can certify a class action only if, after conducting rigorous analysis, it is satisfied that the requirements above are met. *Ferreras*, 946 F.3d at 183 (citation omitted). Rule 23 is no mere pleading standard, and certification "calls for findings by the court, not merely a 'threshold showing' by a party, that each of the requirements of Rule 23 is met." *Id.* (citation omitted). "A rigorous analysis requires that factual determinations be made by a preponderance of the evidence[,]" and a court "must resolve every dispute that is relevant to class certification." *Id.* (citation omitted). Thus, while a court has

---

argument. At this point, the Court will address the class as originally defined. Should Plaintiffs wish to revise their proposed class, they may do so by motion so that Ollie's is provided an opportunity to address the proposed revision. *See Clarke v. Lane*, 267 F.R.D. 180, 194 (E.D. Pa. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 793 n.14 (3d Cir. 1995)) ("All class certification orders are conditional and 'the court retains the authority to re-define or decertify the class until the entry of final judgment on the merits.'").

9

"broad discretion to control proceedings and frame issues for consideration under Rule 23, a class may not be certified without a finding that each Rule 23 requirement is met." *Id.* (citation omitted) (cleaned up).

### 1. Rule 23(a)(1): Numerosity

Plaintiffs must show that their proposed class is "so numerous that joinder of all members is impracticable." *Mielo*, 897 F.3d at 484 (quoting Fed. R. Ci. P. 23(a)(1)) (internal quotation marks omitted). "Like other factual determinations underlying Rule 23 determinations, it is 'a plaintiff's burden to demonstrate numerosity by a preponderance of the evidence.'" *Id.* (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3d Cir. 2013)). "[A]lthough '[n]o minimum number of plaintiffs is required to maintain suit as a class action,' a plaintiff . . . can generally satisfy Rule 23(a)(1)'s numerosity requirement by establishing 'that the potential number of plaintiffs exceeds forty.'" *Id.* at 486 (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)). "Mere speculation as to the number of class members—even if such speculation is a 'bet worth making'—cannot support a finding of numerosity." *Id.* (quoting *Hayes*, 725 F.3d at 357).

To show that their class is so numerous that joinder is impracticable, Plaintiffs employ statistical census data, written complaints,[5] and video footage tending to show that individuals with

---

[5] Plaintiffs proffered written customer complaints in support of establishing numerosity. (ECF No. 51-3). Ollie's objects, without authority or analysis, to the Court's consideration of those written complaints at the class certification stage because each complaint is inadmissible hearsay. (ECF No. 57, p. 12). While the United States Court of Appeals for the Third Circuit has held that a plaintiff may rely on challenged expert testimony to satisfy the requirements of Rule 23 if the expert testimony satisfies the *Daubert* standard, *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015), the Third Circuit has not addressed whether non-expert class certification evidence must be consistent with the Federal Rules of Evidence. The United States Courts of Appeals for the Eighth and Ninth Circuits, however, have held that a district court is not limited to considering only admissible evidence in evaluating a class certification under Rule 23. *See In re Zurn Pex Plumbing Products Liability Litigation*, 644 F.3d 604, 612–13 (8th Cir. 2011); *Sali v. Corona Regional Medical Ctr.*, 909 F.3d 996, 1003–07 (9th Cir. 2018). Their views match those expressed by several district courts addressing the issue. *See, e.g., In re Front Loading Washing*

10

disabilities were attempting to access Ollie's goods. Both Allen and Mullen testified that they are often unable to access the goods provided by Ollie's due to barriers restricting aisle access. (ECF No. 51-1, p. 2); (ECF No. 51-2, pp. 6–7). The statistical census information shows that there are thousands of individuals with mobility disabilities living within the same zip code of Ollie's stores in the states of Alabama, Arkansas, Connecticut, Delaware, Florida, Georgia, Indiana, Kentucky, Louisiana, Maryland, Michigan, Mississippi, North Carolina, New Jersey, New York, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Virginia, and West Virginia. (ECF No. 51-16). These statistics accompany the written complaints of twelve individuals complaining, in one way or another, of various barriers adversely affecting the navigation of individuals who are wheelchair-bound. (ECF No. 51-3, pp. 2–21). Plaintiffs have also provided photographic stills of a random sampling of video footage spanning only seven days, which show approximately sixteen individuals in wheelchairs traversing the aisles of two of Ollie's stores.[6] (ECF No. 51-17); (ECF No. 51-18).

Our Court of Appeals has addressed the validity of a putative class action where it was questionable whether the plaintiffs had shown the class was numerous by relying upon statistical

---

*Mach. Class Action Litig.*, No. 08-51, 2013 WL 3466821, at *10–11 (D.N.J. Jul. 10, 2013) (collecting cases). The Court will consider the written complaints proffered by Plaintiffs in its analysis of the proposed class.

[6] Ollie's argues, without authority, that the seven-day random video sampling of sixteen individuals seen using wheelchairs throughout Ollie's stores is not corroborative because "the Court must speculate as to whether the individuals in the photos have mobility disabilities . . . ." (ECF No. 57, p. 18). The Court is not persuaded that it must determine as a matter of law that each of the sixteen individuals seen using a wheelchair are mobility disabled under the ADA before considering the photographs. The Court's task is to discern whether Plaintiffs have satisfied their burden of establishing by a preponderance of the evidence that the proposed class is sufficiently numerous. The evidence of sixteen individuals using wheelchairs in Ollie's stores—all or some of whom may or may not be disabled as a matter of law—corroborates Plaintiffs' position and is probative of the number of potentially disabled individuals visiting Ollie's stores.

data. In *Mielo*, the plaintiffs brought a putative class action under the ADA against Steak 'n Shake, alleging that they experienced difficulties ambulating in their wheelchairs through Steak 'n Shake's parking facilities. *Mielo*, 897 F.3d at 473. The district court certified the class because, *inter alia*, census data, a single comment from a Steak 'n Shake executive and common sense showed the class was sufficiently numerous. *Id.* at 486. The Third Circuit reversed and remanded in part because a finding of numerosity cannot be supported by a mere comment and common sense where the only hard evidence consisted of statistical data. *Id.* at 486–88. In doing so, the Third Circuit stated:

> Plaintiffs' first strand of evidence—indicating that there are between 14.9 million to 20.9 million persons with mobility disabilities who live in the United States—suggests that it is highly likely that at least 40 of those individuals would have experienced access violations at one of the Steak 'n Shake locations at issue in this litigation. But although those odds might be enough for a good wager, we must be mindful that mere speculation as to the number of class members—even if such speculation is a bet worth making—cannot support a finding of numerosity.

*Id.* (quoting *Hayes*, 725 F.3d at 357) (cleaned up). The Third Circuit made clear that a district court's finding premised almost exclusively on statistical data is not enough to satisfy numerosity—something more is required. *See id.* at 491 (discussing how a plaintiff's task is not "Herculean," and although "census data carries much . . . of [the] burden[,] [s]omething more [is] required to support a reasonable inference.").

Although the plaintiffs in this case employ statistical data to show numerosity, this case is distinguishable from *Mielo* in two significant respects. Plaintiffs have corroborated their statistical evidence with the written complaints and experiences of twelve individuals, and sixteen individuals in wheelchairs seen traversing two of Ollie's stores over the limited window of seven random days. Plaintiffs have concretely shown that thirty people with potential mobility disabilities are customers of Ollie's stores. The statistical evidence presented already indicates that there is a good chance that the proposed class is numerous, *id.* at 486–88, and any speculation

12

accompanying the statistical data alone is overcome by the addition of the concrete, case-specific evidence of written complaints and video footage. Although the Court is not in the business of placing bets, *Mielo*, 897 F.3d at 486, the needle here falls somewhere between an excellent wager and a sure thing. All the same, regardless of whether a betting individual would fancy the odds, Plaintiffs provided the Court with "something more"—written complaints and video footage of at least thirty actual customers—and the Court therefore finds that Plaintiffs have satisfied their burden of showing by a preponderance of the evidence that the proposed class is sufficiently numerous rendering joinder impracticable.[7]

### 2. Rule 23(a)(2): Commonality

Plaintiffs must show that there are questions of law or fact common to their proposed class. Fed. R. Civ. P. 23(a)(2). "Satisfaction of the commonality requirement requires that plaintiffs demonstrate that their claims 'depend upon a common contention,' the resolution of which 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *In re Niaspan Antitrust Litig.*, 397 F. Supp. 3d 668, 679 (E.D. Pa. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Ferreras*, 946 F.3d at 185. "For purposes of Rule 23(a)(2), even a single common question will do." *Marcus v. BMW of N.*

---

[7] Ollie's argues, at times, that Plaintiffs are required to show that members of the proposed class actually experienced access barriers in Ollie's stores. (ECF No. 92, p. 5); (ECF No. 57, p. 18). Plaintiffs correctly point out that they need not show that each member of the proposed class experienced the applicable harm. *See Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) ("class members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are subject to the same harm will suffice.").

13

*Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

Ollie's argues, *inter alia*, that the resolution of this case would require "individualized analyses of each store and each access barrier to determine whether Title III was in fact violated." (ECF No. 57, p. 23). Ollie's contends that the Court would be required to determine which individuals were disabled as a matter of law, which barriers were architectural barriers, whether the barriers were movable or fixed, the location of the barriers, and the amount of time the barriers remained in place.[8] (ECF No. 57, p. 24); (ECF No. 92, p. 8). Ollie's argument, however, has failed to identify or address how these issues would impede the resolution of this case, and to that extent, Ollie's has done no more than point out minute factual issues that are typical of any class action. While the Court is aware that the resolution of these issues may involve differing rules and standards, the answers derived would develop the overarching issue in this case—whether Ollie's policies and procedures caused access barriers in interior paths of travel—and would facilitate its resolution. Ollie's policies are uniform and company-wide. (ECF No. 57, p. 9); (ECF No. 57-1, pp. 12–13, 38–39); (ECF No. 51-8, pp. 24–25). If Ollie's policies and procedures do, in fact, cause access barriers to unlawfully restrict individuals with disabilities from obtaining their desired

---

[8] Ollie's devotes several pages in its Brief in Opposition to argue the following questions of law: (1) Title III does not require public accommodations to adopt policies to correct prospective ADA violations (ECF No. 57, pp. 19–20); (2) Plaintiffs cannot establish a claim under 42 U.S.C. § 12182(b)(2)(A)(ii) (ECF No. 57, p. 20); and (3) because the Architectural Barriers Act Accessibility Guidelines only apply to fixed barriers, Plaintiffs cannot rely on their investigators' findings to show that movable access barriers impermissibly narrowed pathways (ECF No. 57, pp. 22 – 23). While the Court is cognizant that, in conducting a rigorous analysis, it may be required to "make factual findings and legal conclusions that overlap [with] the underlying merits[,]" *Mielo*, 897 F.3d at 482, Ollie's arguments are purely merits-based questions of law. Ollie's has failed to explain, beyond a bare recitation of the rules, how these questions would defeat commonality. To the extent that these arguments have any bearing on the Court's inquiry under Rule 23(a)(2), they simply underscore the existence of common questions of law that must be resolved among the proposed class.

goods, then proposed members who endured violations have suffered the same injury, the resolution of which will resolve a central issue in one fell stroke.[9] *See Hassine v. Jeffes*, 846 F.3d 169, 177 (3d Cir. 1988) ("Rule 23 does not require that the representative plaintiff have endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be *common* to the class . . . ."). As a result, Plaintiffs have satisfied their burden of showing by a preponderance of the evidence that there are questions of law or fact common to the proposed class.

3. **Rule 23(a)(3): Typicality**

Plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Satisfaction of this standard is a "low threshold." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428

---

[9] *See Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 2005) *as recognized in B.K. by Next Friend Tinsley v. Snyder*, 922 F.3d 957, 974 (9th Cir. 2019) ("[i]n a civil-rights suit . . . commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."); *Liberty Res., Inc. v. City of Phila.*, No. 19-3846, 2020 WL 3816109, at *3 (E.D. Pa. Jul. 7, 2020) (finding questions of law and fact common to the class as a whole, including whether policies resulted in failure to provide compliant, accessible curb ramps); *Flores v. Eagle Diner Corp.*, No. 18-1206, 2019 WL 3943355, at *4 (E.D. Pa. Aug. 21, 2019) (finding commonality because plaintiffs were subject to common employment and wage policies); *Tompkins v. Farmers Ins. Exch.*, No. 14-3737, 2017 WL 4284114, at *4 (E.D. Pa. Sept. 27, 2017) (finding commonality and predominance where the defendant enforced common policies and procedures regarding pre-shift work); *Hernandez v. AutoZone, Inc.*, 323 F.R.D. 496, 503 (E.D.N.Y. 2018) (finding commonality and typicality because of uniformly adopted maintenance policies that failed to detect ADA compliance); *Hernandez v. Cnty of Monterey*, 305 F.R.D. 132, 157 (N.D. Cal. 2015) (finding commonality because of "systematic and centralized policies or practices in prison system that allegedly expose[d] all inmates in that system to a substantial risk of serious future harm."); *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 514 (N.D. Cal. 2011) (finding commonality where plaintiffs were denied access because of common failure of policies and practices); *Californians for Disability Rights v. Cal. Dep't of Trans.*, 249 F.R.D. 334, 345 (N.D. Cal. 2008) (finding commonality because of allegations of uniform policy of improper design guidelines and failure to ensure compliance with those guidelines); *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 605 (N.D. Cal. 2004) (finding commonality and typicality because, *inter alia*, stores were built in accordance with corporate prototypes involving centralized decision-making).

(3d Cir. 2016). "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Id.* (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998)) (internal quotation marks omitted). "To conduct the typicality inquiry, the court must examine 'whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.'" *In re Niaspan*, 397 F. Supp. 3d at 680 (quoting *In re Blood Reagents Antitrust Litig.*, No. 09-2081, 2015 WL 6123211, at *26 (E.D. Pa. Oct. 19, 2015)).

Plaintiffs' legal theories coincide with those of the proposed class because they all stem from the same alleged conduct—discriminatory, company-wide policies and procedures restricting their access to the goods and services offered in Ollie's stores. The claims of Plaintiffs and the proposed class are therefore typical because the legal theories pursued are those tailored to remedying discriminatory policies and removing unlawful access barriers. Plaintiffs have satisfied their burden of showing by a preponderance of the evidence that the claims of the proposed class are typical.

    4.    **Rule 23(a)(4): Adequacy**

Fourth, Plaintiffs must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Ollie's does not argue that Plaintiffs or the law firm of Carlson Lynch, LLP will not adequately represent the interests of the proposed class. Consequently, the Court is satisfied that both Plaintiffs and Carlson Lynch, LLP will adequately represent the interests at stake in this litigation.

### 5.   Rule 23(b)(2): Injunctive or Declaratory Relief

Although Plaintiffs have satisfied the requirements of Rule 23(a), they must still satisfy either Federal Rule of Civil Procedure 23(b)(1), (b)(2), or (b)(3). *Ferreras*, 946 F.3d at 182. Plaintiffs move for certification under Rule 23(b)(2), which permits class actions requesting injunctive or declaratory relief to proceed where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Actions brought under Rule 23(b)(2) typically involve "actions in the civil-rights field where a party is charged with discriminating unlawfully against a class." *Mielo*, 897 F.3d at 482 n.16. As here, civil-rights actions brought under the ADA are precisely the type of actions for which Rule 23(b)(2) was originally designed. *Id.* Plaintiffs have set forth that Ollie's uses uniform policies and procedures that cause access barriers preventing individuals with disabilities from lawfully accessing Ollie's goods. An injunction requiring the removal of the existing access barriers, and the modification of Ollie's policies to prevent the use of access barriers restricting disabled individuals' use and enjoyment of Ollie's goods would provide appropriate relief to the proposed class.

### 6.   Class Certification Will Be Granted

The Court is satisfied that Plaintiffs' proposed class should be certified because they have shown by a preponderance of the evidence that their proposed class is numerous enough to the point that joinder is impracticable, that there are common questions of law or fact common among the proposed class, that the claims of the proposed class are typical, that Plaintiffs and the law firm of Carlson Lynch, LLP will adequately represent the interests of the proposed class, and that final

injunctive relief modifying Ollie's policies and procedures will afford appropriate relief to the proposed class as a whole. The following class will be certified:

> All persons with qualified mobility disabilities who have attempted, or will attempt, to access the interior of any store owned or operated by Defendant within the United States and have, or will have, experienced access barriers in interior paths of travel.

Allen and Mullen will be appointed as the representative Plaintiffs, and the law firm of Carlson Lynch, LLP will be appointed as counsel for the class.

### III. CONCLUSION

For the reasons set forth above, the Court will grant in part and deny in part Plaintiffs' Request for Judicial Notice (ECF No. 65). Plaintiffs' request that the Court take judicial notice of the Dollar General Settlement Agreement (ECF No. 65-1) and the zip code tabulation statistics compiled by the United States Census Bureau (ECF No. 51-16) will be granted because the parties agree that they are judicially noticeable. Plaintiffs' request that the Court take judicial notice of the printout of disability statistics (ECF No. 51-15) will be denied because that information is not authenticated and subject to reasonable dispute. The Court will also grant Plaintiffs' Motion for Class Certification (ECF No. 47) because they have established Article III standing and shown by a preponderance of the evidence that their proposed class satisfies the requirements of Rule 23. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

3/26/21
Dated: